# THE SOUTH BALTIMORE CAR WORKS *vs.* REINHART SCHAEFER.

*Negligence—Master and Servant—Injury Caused by Knife-blade Flying Off From Machine—Duty of Master to Furnish Safe Machinery—Inspection—Adjustment of Machine by Fellow Servant—No Presumption of Negligence From Happening of Accident—Insufficient Evidence.*

A presumption of negligence on the part of a master is not justified by the mere fact that an employee is injured by the breaking of a piece of machinery, when there is no evidence that defects in it could have been discovered by inspection or that due care had not been exercised in its selection.

It is the duty of an employer to exercise due care in providing reasonably safe machinery and appliances and afterwards to examine and test them as often as custom and experience require ; but if an injury is caused to an employee by the breaking of machinery, originally safe, it must be shown that the break was caused by a defect which would have been revealed by such inspection before negligence on account thereof can be imputed to the employer.

When an injury is caused by the faulty adjustment of a part of a machine, which adjustment was made by a fellow servant of the person injured, the master is not liable.

Plaintiff, while at work in defendant's shop, was injured by a knife which flew off from a machine then in operation about one hundred feet distant. This machine was a rapidiy revolving cylinder to which four knife-blades were attached and was used in making moulding work. Each knife-blade was fastened by means of five steel bolts and nuts. The blades varied in size according to the particular style of moulding to be done. On the day of the accident the blades and bolts had been selected by the assistant foreman and fastened by him to the cylinder. After the accident it was found that one of the knives was off of the cylinder and that two of the bolts which kept it in place were broken and the other three bent and twisted. No such accident had ever before occurred in the use of the machine. The defendant's evidence showed that the machine and its appliances had been purchased from a reputable manufacturer, and that there was no visible defect when adjusted on the day the injury was inflicted. The plaintiff offered no evidence to show how the accident happened or that an inspection of the machine would have disclosed the defect which caused it to break. *Held*, that it is impossible to ascertain from the evidence whether the breaking of some of the bolts was caused by defects in

them or by the negligent adjustment of the machine by a fellow servant of the plaintiff ; ·that there is no evidence of negligence on the part of the defendant in the selection of the machine and its appliances or in failing to inspect it afterwards ; that the case is not one in which negligence can be inferred from the circumstances of the accident itself, and that consequently the plaintiff is not entitled to recover and the case should be withdrawn from the jury.

Appeal from Baltimore City Court (SHARP, J.), where there was a verdict for plaintiff for $7,500, which was afterwards reduced with his consent to $5,000.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edgar H. Gans* and *Vernon Cook* (with whom was *B. H. Haman* on the brief), for the appellant.

The sudden breaking or giving away of a piece of machinery is not sufficient as between master and servant to authorize the submission of the case to the jury.   We cite a number of illustrative cases.   Where a servant was injured by the breaking of a chain used in raising a wrecked and derailed car, it was said: "The mere fact of the breaking of the chain is not sufficient to authorize the inference or presumption that the master had failed to exercise reasonable care in its selection." *Brymer* v. *Southern Pac. E. Co.*, 90 Cal. 496.   Where a brake-chain parted or something gave out so that the brake-wheel suddenly turned and threw a brakeman. from the car, the Court said these facts do not show that the defendants were guilty of negligence.   The Court further said : "Why did the brake-chain part?   Was it too light, not of the usual and proper size, or not properly attached?   Did it break because of a defect in one of the links, or was it worn out from use?   If there was a defect in it, could it have been discovered by proper inspection?   To these questions the evidence introduced by the plaintiff furnishes no answer."   The Court, therefore, held that it was proper to direct a verdict for the defendant. *Sack* v. *Dolese*, 137 Ill. 129.   Where the alleged cause of injury was the bursting of an emery wheel, unexplained, it was

held that the plaintiff could not recover. *Simpson* v. *Pittsburg Locomotive Works*, 139 Pa. St. 245. Bursting of a flywheel not sufficient. *Prehl* v. *Albany*, 162 N. Y. 617.

The fact that a cup in the lantern fell out, was held not sufficient to show that the defendant had failed to use ordinary care in the matter of furnishing a reasonably safe appliance. *Davis* v. *Columbia R. Co.*, 21 S. C. 93. Where a car-wheel broke from some cause unknown and caused injury, it was held that this was not sufficient to take case to jury. *Morrison* v. *Phillips*, 44 Wis. 410. Where an employee was injured by the fall of a dirt plow from a car, and the lower Court held that the jury were at liberty to infer negligence from fact of falling of plow, the Appellate Court reversed the judgment on the ground that no such presumption arose. *De Van* v. *P. & N. Y. C. & R. Co.*, 130 N. Y. 632. Where an employee of a railroad was injured by the overturning or derailment of a car, lower Court held that these facts were presumptive evidence of negligence and shifted the burden to the defendant to show that there had been no negligence. The Appellate Court reversed on the ground that as between master and servant no such presumption arose. *Minty* v. *U. P. R. Co.*, 2 Idaho, 437. Where injury was caused by breaking of a derrick, it was held that no presumption of negligence arose. *Duffy* v. *Upton*, 113 Mass. 547. Where an elevator fell, and it was found after the accident that one of the balance ropes had become detached, the eye having slipped off the hook, and the weight attached to the opposite end had fallen to the cellar and that the pin which held the wheel on the axle had come out, it was said: "The sudden breaking or giving way of a piece of machinery properly constructed is not sufficient to justify the conclusion of negligence. Machinery often gives way from some unknown cause or hidden defect." *Robinson* v. *Wright & Co.*, 94 Mich. 283. Where a belt slipped from one pully to another, causing injury, it was held that this was not sufficient to justify inference of a defect in the machinery. *Dingley* v. *S. K. Co.*, 134 N. Y. 555. The mere fact of a collision of railroad trains does not establish a

presumption of negligence on the part of the railroad company in favor of its employees. *Smith* v. *M. P. R. Co.*, 113 Mo. 70. The mere fact of the explosion of a steam boiler has frequently been held as between master and servant not to raise a presumption of negligence on the part of the master. *Texas* v. *Barrett*, 166 U. S. 618; *Huff* v. *Austin*, 46 Ohio St. 386; *L. & N.* v. *Allen*, 78 Ala. 49; *R. R. Co.* v. *Moore*, 77 Ill. 217; *Morris* v. *Southwerth*, 154 Ill. 125; *R. R. Co.* v. *Lynch*, 147 Ind. 175.

The reason for all this line of decisions is clear. When a piece of machinery suddenly breaks this may be due to a variety of causes.

1. To a failure on the part of the master to use due care in providing proper appliances.

2. To a latent or hidden defect.

3. To an improper use of the particular machine by a fellow-servant of the plaintiff.

4. To a pure accident which cannot be explained.

Now, if it were due to the first of the above causes the master might be held liable. If it were due to the second, third or fourth causes the master would not be liable. As to second cause, see *Nugent* v. *B. C. P. Ry. Co.*, 86 Md. 349. As to fourth cause, see *Washington Turnpike Co.* v. *Case*, 80 Md. 36.

There was no evidence to show that cause No. 1 was more probable than any of the other three. To allow such a case to go to the jury is to allow them to *speculate* as to which of the four possible causes produced the break in the machinery. Such action is contrary to fundamental principles.

It is well settled that where an injury may be due to one of two or more causes, one cause being such as would make defendant legally liable and the other such as would not make defendant liable, then the case should not be left to the jury to speculate or conjecture blindly as to which of several equally probable causes produced a given result. This is one of the principles which underlies all of the cases cited. It is further illustrated by the following cases:

In *Orth* v. *St. Paul M. & M. R. Co.*, 47 Minn. 384, a fireman was injured by jumping from the cab of the engine, which he was forced to do by the engine kicking, that is, the furnace door was blown open and flames forced from the furnace burst into the cab, and there was no certain proof as to what caused this condition, different experts advancing theories as to what might have caused it, some of which, if the cause, would charge negligence upon the servants of the company and would make it liable, it was held that there was nothing upon which to base a verdict but mere conjecture, which would not satisfy the demand of affirmative and preponderating proof. In *Hewitt* v. *Railway Co.*, 67 Mich. 61, an engineer was injured in a collision with a flat car, which half an hour previous had run from a side track on to the main track. Various theories were advanced as to what caused the car to run from the siding, but there was no proof. A verdict in favor of the plaintiff was set aside.

The case of *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34, is quite instructive. There an employe was injured by the breaking of one or two timbers which formed a sort of bridge over a run. The evidence disclosed no defect in them when put in, and if sound originally, five years were not sufficient to cause dangerous decay or weakness. It was suggested that the timbers might have become weakened by rock falling upon the bridge. It was said by the Court: "The mere fact of such injury is no evidence of fault. It may be guessed or surmised that there was negligence somewhere, and one juror may guess that it was in the want of a careful selection of timber, another that it was in the want of subsequent inspection, or in the want of care to prevent rocks from falling on the bridge, but the case affords no safe ground for anything beyond conjecture, and if the master can be held liable, under the circumstances, on mere guess or inferences, the rule that the employee assumes the ordinary risks of his employment will be wholly done away with." Again, in *Carruthers* v. *C. R. I. & R. Co.*, 55 Kan. 603, it is said: "A thing cannot be said to be established by circumstantial evidence unless the facts relied on are

of such a nature and are so related to each other that it is the *only conclusion that can reasonably be drawn from them*, and it is not sufficient that they be merely consistent with that theory." See also *Kincaid* v. *R. Co.*, 22 Oregon, 35; *P. & R. Co.* v. *Hughes*, 119 Pa. St. 302.

There was no evidence to show that the break was more probably due to cause No. 1, than to causes Nos. 2, 3 or 4. In fact, we think, that the evidence was practically conclusive that the break was due to causes Nos. 2, 3 or 4, and not to cause No. 1. Aside from this, however, even if we concede that cause No 1 was equally probable with causes Nos. 2, 3 and 4, or with all of them together, yet the case should not have gone to the jury, for they could only conjecture as to which of equally probable causes brought about the breaking of the bolts. In other words, the doctrines *res ipsa loquitur* cannot apply where the fact proved, as here, the breaking of the bolts, may have been due to a cause for which the defendant is liable, or may have been due to some other cause for which the defendant is not legally liable. *Benedick* v. *Potts*, 88 Md. 52.

How can it possibly be said that the breaking of the bolts in this case permits of *no inference save that the defendant was guilty of negligence* in not using due care to provide proper bolts? Is it not at once apparent that an equally probable inference is that the break was due to a latent defect? Do not the facts proved with equal probability admit of the inference that the breaking of the bolts was caused by the negligence of a fellow servant? Again, is not the theory of inevitable accident a fourth inference which might fairly be inferred from the proof? We think, therefore, that the doctrine of *res ipsa loquitur* can have no application, because the fact proved admits of a variety of inferences, some of which might render the defendant liable, while others would excuse him, and there is nothing to show that an inference of the latter kind is less probable than one of the former.

The evidence as to inspection was conflicting. The defendant's witness, Koehl, testified that he did inspect the bolts in question immediately before using them. On this exact point

his evidence is uncontradicted.  The defendant's witness, Meyer, testifies to a very thorough system of inspection.  The plaintiff's witnesses differ on this point.  Some of them say that each employee was expected to inspect his machine before using it.  Others, however, deny this and say that they never saw any inspection of machinery made by anyone.  Admitting, as we must, for the purpose of this argument, that the latter evidence is true, we still say that there are three independent reasons why the evidence as to lack of inspection was not sufficient to take the case to the jury : .

(*a*) Because no causal connection is shown between the alleged failure to inspect and the happening of the accident ; that is to say, there was nothing to show that the trouble which caused the break would have been discovered, even if there had been an inspection.

(*b*) Because the duty of inspection has no application to the adjustment of appliances, and the accident here arose only out of such adjustment.

(*c*) Because the bolts in question had been in daily use for a long time and had uniformly proved adequate and safe. Such use is in itself the most perfect inspection and test and justifies the continued use of the appliance without other inspection.

The plaintiff in this case should have shown what was the particular defect in the bolts and that the defect was of such a nature that it would have been discovered by a proper inspection.  There is absolutely no evidence on either of these points, therefore, by all the authorities the case cannot be left to the jury.  *Sack* v. *Dolese*, 137 Ill. 131–3;  *DeGraff* v. *N. Y. C. & H. R. R. Co.*, 76 N. Y. 128;  *Ladd* v. *New Bedford R. R.*, 119 Mass. 412;  *Carlson* v. *Phœnix Bridge Co.*, 132 N. Y. 273;  *P. & R.* v. *Huges*, 119 Pa. St. 301;  *Doyle* v. *White*, 35 N. Y. Sup. 760.

The duty of the master does not extend so far as to require him to attend to the proper regulation of those parts which have to be adjusted in the course of their use, and with regard to the particular work to be done, and the adjustment of

which is incident to the ordinary use of the machine. *Eichler* v. *Hanggi*, 40 Minn. 263; *Burns* v. *Sennett*, 99 Cal. 363; *Mc Campbell* v. *Cunard S. Co.*, 144 N. Y. 552; *McGenty* v. *Alhot Co.*, 155 Mass. 183; *Peschel* v. *C. M. & St. P. Ry.*, 62 Wis. 338; *Bailey on Personal Injuries Relating to Master and Servant*, secs. 23 to 27, inclusive.

When an appliance or machine not obviously dangerous has been in daily use for a long time and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of negligence. *Stringham* v. *Hilton*, 111 N. Y. 197.

*Joseph C. France* and *Ward P. Littig* (with whom was *Martin G. Kenney* on the brief), for the appellee.

The jury had a right to infer in the absence of any explanation on the part of the defendant as to how the accident happened, that a knife that was not in use being thrown and hurled from the machine by the breaking of the bolts whereby it was fastened to the revolving cylinder, raised the presumption of negligence on the part of the defendant in not providing safe appliances.

The facts of this case, without explanation raise the presumption that the defendant had not kept its implied engagement set forth in the rule above quoted. The case of *Winkleman & Brown* v. *Colladay*, 88 Md. 78, is an exact parallel to the case at bar.

The facts clearly bring the case within the doctrine of *res ipsa loquitur* as the same is announced in *Benedict* v. *Potts*, 88 Md. 53.

In *Treusch* v. *Kamke*, 63 Md. 281, this Court held that the mere falling of a wall, raises the presumption of negligence and entitles the plaintiff to call for explanations from the defendant; and that it was for the jury and not for the Court to say whether such explanations were satisfactory. Nor can it be contended that the doctrine under discussion has any narrower application when applied to cases between master and servant. *Colladay's case*, above quoted, was such and in *Rose's*

*case*, 20 Blatchford, 411, JUDGE WALLACE uses the following language : "Undoubtedly the presumption has been more frequently applied in cases against carriers of passengers than in any other cases of negligence ; but there is no foundation in authority or reason for any such limitation of the rule of evidence. The presumption originates from the nature of the act and not from the nature of the relations between the parties."

In *Griffin* v. *Boston and Albany Railroad*, 148 Mass. 143, a servant was killed by a train that had separated through the breaking and spreading of a coupling link and there was no evidence of the master's failure to supply safe appliances other than the breaking. The Court held " the separation of the train in consequence of the spreading of a link, where nothing further appears, is more naturally to be attributed to an imperfection or defect in the link than to any other cause. Ordinarily such separation would not happen if the link was sound or suitable for use. We think, on the whole, the plaintiff was entitled to go to the jury on this point."

In *Graham* v. *Badger*, 164 Mass. 42, the servant was injured by the fall of an iron block, due to the breaking of a rope. The rope had been spliced, but the testimony showed that the splicing did not weaken it ; that it was stronger in its spliced part than any other, and that the rope was as good a one as could be bought. Like in *Schaefer's case* the defendant had his *theories* but no direct testimony. The defendant asked the Court (1) to take the case from the jury and (2) to rule that the breaking of the rope was not *prima facie* evidence of negligence. CHIEF JUSTICE HOLMES delivered the opinion of the Appellate Court and the question of the presumption of negligence was directly at issue. He said "the main question is whether the Judge before whom the case was tried, was right in refusing to rule that the mere breaking of the rope was not *prima facie* evidence of negligence on the part of the defendant." And discussing the doctrine of *res ipsa loquitur* the Judge says : "It is merely a short way of saying that so far as the Court can see, the jury, from their experience as

men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and therefore a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case.", And further says, that these presumptions of fact are for the jury; *Howser's case*, 80 Md. 146, being cited with approval.

In *Coleman* v. *Mechanics' Iron Foundry*, 168 Mass. 254, the servant was injured by the breaking of one of the shanks of a ladle.   There was no evidence why it broke but there was evidence "that these shanks were inspected regularly every day, and that they were in good condition."   The Court held that "if an implement, the breaking of which is attended with danger, breaks in the proper use for the purpose for which it was designed, it is some evidence that it is defective in the sense that, at the time, it is not safe or suitable for the use to which it is put."   How much stronger is the presumption if, as in the case at bar, the implement is not even standing the strain which it was designed to bear.

In *Volkman* v. *Manhattan Railroad Company*, 134 N. Y. 418, the plaintiff was injured by the falling of a bolt from an elevated structure, the bolt having broken two inches from the nut which held it in position.   There was no evidence why the bolt broke ; on the other hand the defendant testified that the structure was regularly inspected and nothing was found to be wrong at the time of the accident.   The Court held that the case should go to the jury on the presumption of negligence ; and that the fact of inspection was not sufficient to overthrow the presumption ; and that the jury had the right to determine the credibility of the inspector's testimony.

In *Railroad* v. *Baird*, 1 Moore, P. C. (N. S.) 117, it is said: "There can be no doubt that where an injury is alleged to have arisen from improper construction of a railroad the fact of its having given away will amount to *prima facie* evidence of its insufficiency."   The defense was stated to be founded "upon proof of proper construction of the railway, of the

daily inspection of the line, etc." Even an expert engineer testified "no engineer could have foreseen such an accident as this." But it was held a proper case for the jury, that the giving away was some evidence of negligence.

In *Marshall* v. *Furniture Company*, 67 Mich. 167, a knife flew off from a rapidly revolving shaper head. The testimony was strong that the knife was fastened as tighly as it could be but the fact that a knife did fly off when it was fastened as it was designed to be and when the testimony indicated no imperfection in carrying out the design was held to be evidence tending to prove that the design was bad.

In *Houston* v. *Brush and Curtis*, 66 Vt. 331, a leading case, the servant was struck by one of the wheels of a tackle block attached to the mast of a derrick by a pin. The pin came out and the block fell. "Neither (p. 341, 348) the plaintiff nor defendant had any apprehension that an accident of this kind was likely to happen" and the Court held, "that the jury had the right to consider the fact that the pin came out when it did and draw from. it the inference that the defendant had failed to exercise ordinary care." The presumption of negligence was held to obtain.

If a machine consists of many parts, which require frequent adjusting and replacing, such parts become identified with the machine as if included in its original construction; and a defect in one of them is a defect in the machine. And the duty of seeing that such parts are not defective is one incumbent upon the master, and if he delegates that duty, is still liable for any resulting injury that may occur by reason of failure or neglect to discover defects in such adjustable parts. *Toy* v. *U. S. Cartridge Co.*, 34 N. E. R. 461.

The duty of the master to inspect the machinery is an affirmative and positive duty; and the master cannot remain passive so long as the machine works well and seems safe, and wait for a part to break and then replace it. The witnesses for the plaintiff testified that there was no inspector whose duty it was to inspect nor was there any system of inspection in the defendant's shop nor did the witnesses for

the defendant make any serious claim to the contrary. *Braun* v. *Ry. Co.*, 53 Iowa, 595; *Houston* v. *Brush*, 66 Vt. 331; *Volkman* v. *Manhattan Co.*, 134 N. Y. 418; *Goodsell* v. *Taylor*, 41 Minn. 207; *Tagney* v. *Wilson*, 87 Mich. 453; 2 *Thompson on Negligence*, 984, 1226; *Moran's case*, 44 Md. 293; *Wise* v. *Ackerman*, 76 Md. 389; *B. & O. R. Co.* v. *Stricker*, 51 Md. 48.

In *Western Telegraph Company* v. *Tracey*, 114 Fed. Rep. 282, a lineman had been injured by the breaking of a pole which was decayed below the surface, but of course had been originally sound. The Court held that inspection is the duty of the master, and that he is responsible for negligence in its performance, although there was no negligence in the selection of the inspector. See also *Hough* v. *Railway Co.*, 100 U. S. 213.

But the question whether inspection is an assignable duty, is not involved in the case at bar; there is no pretense that the corporation did delegate to anyone the duty of inspecting these bolts and nuts. To meet the question of inspection, it was contended for the appellant: (1) that each operator was an inspector; (2) that if the defect was patent, the fellow servant doctrine applied, and if latent there was no negligence anywhere; (3) that even if it was the appellant's duty to inspect, the appellee must show that such inspection would have revealed the defect, and that the master had notice or knowledge of the same.

The answers to these contentions are obvious: (1) each operator denied that he had any duty of inspection and this raised a conflict between their testimony and Koehl's. Moreover, it is too clear for discussion, that "Inspection" as used by the appellant's witnesses simply meant "looking at." "Inspection should not rest alone upon the vision, because there are many defects, the existence of which could have been ascertained by reasonable and ordinary tests which involve the exercise of senses other than the sense of vision." *Texas* v. *Allen*, 114 Fed. 177. (2.) It is true that if Koehl used obviously defective bolts when there were good ones at hand, he was a negligent fellow servant; but Koehl says he looked

at the bolts and nuts and they were "perfect." If, on the other hand, the defect consisted in latent weakness, it is not easy to understand how that fact could require the Court to take the case from the jury. If latent simply means invisible, the answer is, that "seeing" is not "inspecting;" if latent means not discoverable by reasonable tests, then it was the province of the jury to determine whether the defendant's methods of inspecting, not to mention testing, were reasonable. The jury had before it two prominent facts, first, that the defendant took the chance that if a bolt was going to break, it would "generally" break when the nut was being screwed up; and secondly, the fact that nearly all of the original complement of bolts had broken. (3.) It is very true that a master is not liable for failure to inspect if there is no causal connection between the failure and accident; nor is the master responsible, where as in the case of a bursting fly-wheel there is no test known to mechanics which will reveal the defect. But every man knows that bolts intended to bear great strain, can be and are tested, and it was certainly not an irrational inference that these surviving bolts which broke when not in use would have yielded if tested. And the rule is laid down, 2 *Bailey Personal Injuries*, p. 879, that "ordinary care requires that a master should take notice of the liability of parts of machinery to decay and wear out by use and make provisions for such contingencies."

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages sustained by the plaintiff while in the employment of the defendant, the South Baltimore Car Works.

The verdict of the jury was in favor of the plaintiff and this is the defendant's appeal.

At the close of the whole case the plaintiff and defendant each offered several prayers. There was also an exception taken to the admission of certain testimony; but the conclusion we have reached renders it unnecessary to do more than discuss the question presented by the ruling upon the de-

fendant's first and second prayers, by which it was sought to take the case from the jury.   The learned Court below rejected these prayers, but we are of opinion, after a careful examination of the record, that they should have . been granted. Both of them deny the legal sufficiency of the evidence to show such negligence on the part of the defendant company in the discharge of its legal obligations to the plaintiff as would entitle him to recover.   We will proceed, therefore, as briefly as may be, to state the facts relied on by the plaintiff to show a failure of duty and consequent negligence in the part of the defendant.

The defendant is engaged in the business of building freight cars.   At the time the plaintiff was injured he was working at a boring machine in defendant's shop.   In another part of the shop, but in the same room, about 100 feet distant from him, one of his fellow workmen was operating a machine which some of the witnesses called "a sticker."   Its proper name is "A 12-inch Fay outside moulder."   It is thus described : "It is a machine in general use for making moulding work.   It is about 8 feet long, 5 feet wide and 3 feet high.   The piece of wood which is to be cut is placed on the bed of the machine, and then pushed forward by means of rollers and brought into contact with the knife-blades, which do the cutting. These knife-blades are attached to what is called a revolving cylinder.   It is not, however a cylinder in the geometrical sense, as it has four flat sides.   This cylinder so called revolves on its axis.   To each of the four flat sides there is attached a knife-blade.   These knife-blades vary in size and shape, according to the particular style of moulding to be done.   The one which hurt Schaefer, the plaintiff, was about 12 inches long, 4 inches wide and one-half inch thick.   These knife-blades are not a permanent part of the machine, but are removable at pleasure, and are changed from time to time in accordance with the work on hand.   Each knife-blade is fastened to the cylinder by means of five steel bolts and nuts. In each of the four faces of the cylinder is a slot extending its entire length, 12 inches.   The heads of the bolts are made

to fit tightly in this slot, the body of each bolt passes through an opening in the knife-blade, five such openings being provided, one for each bolt.   A nut is then placed on the end of each bolt, the nut is tightened and the knife-blade is firmly clasped to one of the flat sides of the cylinder, and held in position by the five bolts and nuts.   The sharp edges of the knife project about a quarter of an inch over the edge of the cylinder, so that they are left free to do the necessary cutting. The rapid rotary motion of the cylinder brings the knife-blades successively into contact with the wood, and thus cuts or moulds the same into the desired shape."

The witness, Junker, who was operating the moulder at the time of the accident testified that he did not know how the accident happened ; that the blade flew off and struck the plaintiff ; that the blades had been fastened in position by the assistant foreman who usually attended to the adjustment of the machine ; that the bolts used were selected by the assistant foreman from a number of bolts kept in a box alongside the machine ; that they were cutting a piece of white pine which was not unusually difficult to cut ; that he had no reason to believe that the cutting of such a piece of wood would cause the blade to fly off and that he had never heard of such a thing happening before during the two years he had been operating the machine.   The witness, Kelly, testified that he saw the plaintiff fall and that after the accident he examined the machine and discovered that one of the knives was off of the cylinder and that two of the five bolts which had been used to keep it in place were broken and the other three were bent or twisted.   The plaintiff testified that the knife struck him.

This is all the testimony we find in the record relating to the accident, and taking it as true we are unable to ascertain from it whether the breaking of some and the twisting or bending of the other bolts was caused by defects in the bolts and nuts, or by the negligent and faulty adjustment of the machine by a fellow servant of the plaintiff.   Indeed with the exception of the fact that they broke there is nothing in the evidence to

show that either the machine the bolts or the nuts were in any respect defective.

Assuming this to be so, however, the plaintiff contends that this is a case in which negligence may be inferred from the breaking of the machinery and the consequent injury of the plaintiff, in other words that it is a case to which the maxim *res ipsa loquitur* properly applies. In order to test the correctness of this proposition it will be necessary to state the well-established rule regulating the duty of employers to employees. That rule is thus clearly and briefly stated in the recent case of *Wood* v. *Heiges*, 83 Md. 257. " When the servant engages to perform certain services for a compensation, it is implied as a part of the contract that, as between himself and his employer, he assumes all the risks incident to the service. And these risks include such as arise from the hazardous character of the service and from the negligence of other servants in the same employment   *   *   But the master himself is bound to use ordinary (that is due and reasonable) care and diligence to provide proper materials and appliances to do the work and in the selection and employment of competent and careful fellow servants."

It is obvious, therefore, that the plaintiff must not only show that he was injured, because the bolts were defective, but he must go one step further and offer evidence legally sufficient to show that the defendant did not use reasonable care in procuring proper bolts for the adjustment of the knife. But there was no such evidence offered. On the contrary the evidence is that both the machine and its appliances including the bolts and nuts were purchased from Fay Co. shown to be first-class manufacturers of machinery. As we have said, the first question therefore which presents itself is whether the mere fact that the bolts broke is legally sufficient evidence of defendant's negligence. In discussing this question it must not be forgotten that the defendant's foreman went upon the witness stand and offered such explanation as he could in regard to the breaking of the bolts, for in this respect this case differs from most, if not all, the cases in which the maxim *res*

*ipsa loquitur* has been applied to such cases as this. Thus in *Colladay's case*, 88 Md. 91, it is said " There was no attempt to explain or refute the negligence imputed by the plaintiff's testimony, and in the absence of this explanation on the part of the defendant the law raises the presumption of negligence."

· The case just cited was much relied on by the plaintiff, but we think it clearly distinguishable from the case at bar not only by the fact that there was a failure even to make any attempt to account or explain for the falling of the elevator, but by reason also of the evidence tending to show that the ropes which supported the elevator were worn and frayed—thus showing that a *permanent part* of the appliance, and therefore the appliance itself, was in a dangerous condition which could have been discovered by proper inspection. But in addition to these facts, it was in evidence that the elevator fell at a time when it was not in motion, from which the jury might well have inferred neglect on the part of the defendant to furnish a safe appliance. The state of case before us now is altogether different. The testimony shows that immediately before the accident the bolts were selected and used to fasten the knives on the machine by the person whose duty it was to do that work. He testifies they were in perfect condition, that he examined them and there was nothing the matter with any of them that he could see, that he left nothing loose and fastened everthing, he fastened the blade on all right   *   *   * He further testified that after the blade came off he noticed that the third and fourth bolts were broken off and the nut broken off the bolt;   *  *   that he could not explain what it was that made those bolts break, " unless the frost had set in, as it generally does in the winter, and more bolts break than in summer." When asked what effect the frost would have, he replied " It has a tendency when you tighten the nut up on the bolt to crack it and make a hidden defect " which could not always be discovered by looking at the bolt before putting it in, but that he had not discovered anything of the kind when he selected and examined the bolts the morning of the acci-

dent." As was said in *Prehl* v. *Albany Railway*, 30 Appelläte Division (N. Y.) 169 : To punish the defendant because it cannot explain the cause of the break " is not to punish it because it has done wrong, but because it does not know what we wish to find out."

It has been held in a number of cases that the sudden breaking of machinery is not sufficient of itself, to warrant the Court in sending the case to a jury. Thus the mere fact of the breaking of a chain, *Brymer* v. *Southern Pacific E. Co.*, 90 Cal. 496; the unexplained bursting of emery wheel, *Simpson* v. *Pittsburg Locomotive Works*, 139 Pa. St. 245; the parting of a brake-chain on a car, *Sack* v. *Dolese*, 137 Ill. 129; the bursting of a fly-wheel, *Prehl* v. *Albany Ry.*, *supra;* the breaking of a car-wheel from some cause unknown, *Morrison* v. *Phillips*, 44 Wis. 410; the breaking of a derrick, *Duffy* v. *Upton*, 113 Mass. 247, were held not sufficient to justify an inference or presumption of negligence. On the contrary the plaintiff cited a number of cases to sustain his position that the mere breaking of appliances or machinery is evidence from which the jury may infer negligence, but it will be found that few or none of them are in point. Thus in the case of *Graham* v. *Badger*, 164 Mass. 42, the plaintiff was injured by the falling of a block from a derrick caused by the breaking of a rope. It appeared by the evidence that, as in *Colladay's case, supra,* the rope was worn and frayed and that it broke at the place where it had broken before and had been " spliced." And as in *Colladay's case*, it was held that the rope was a permanent appliance which the plaintiff had a right to expect the defendants would use due care to keep in good and safe condition. In the case of *Coleman* v. *Mechanics Iron Foundry Co.*, 168 Mass. 254, the breaking of an iron rod was the cause of the injury. But in addition to the mere breaking of the rod it was in evidence that the defendant had the machine of which the rod was a part, reconstructed, and that the rod, which was originally designed to carry one iron ball weighing 113 pounds was made in the reconstructed machine to carry double that weight. There was also evidence of the fact that the break

was not "a fresh" one—not "freshly parted," and that the
rod had been subjected to vibration which caused crystalliza-
tion.    In *Griffin* v. *Boston, &c., Railroad*, 148 Mass. 143, and
in *Rose's case*, 20 Blatchford, 411, it was held that in the ab-
sence of any explanation, and when the defendant "stood
mute," as in the *Colladay case*, the jury might infer negligence,
in the one case from the separation of the train in consequence
of the spreading of a link and in the other from the explosion
of a boiler.    In the case at bar, however, as we have already
said the defendant not only put witnesses upon the stand to
explain, as far as it could, the cause of the breaking of the
bolts, but their testimony affords not the least proof of negli-
gence; on the contrary it shows due care on the part of the
defendant in providing good and safe machinery and appli-
ances, as well as care on the part of the assistant foreman
whose duty it was to adjust the knives.    The testimony of
these witnesses is uncontradicted and it follows, if we are cor-
rect in our conclusion that *res ipsa* does not apply, the mere
breaking of the bolts was not legally sufficient evidence to
warrant an inference of negligence, that there was nothing in
the case to submit to the jury.    In the recent case of *Benedick*
v. *Potts*, 88 Md. 55, McSHERRY, C. J., delivering the opinion,
it is said, quoting from *Thompson on Negligence*, 574, that the
maxim is applicable to two classes of cases only ; first, "when
the relation of carrier and passenger exists and the accident
arises from some abnormal condition in the department of
actual transportation ; second, where the injury arises from
some condition or event that is, in its very nature, so obviously
destructive of the safety of person or property, and is so tor-
tious in its quality as, in the first instance at least, to permit
no inference save that of negligence on the part of the person
in the control of the injurious agency." Of course if this
case is included in either, it must be in the second class above
mentioned, that is to say the circumstances must be such as to
compel in the first instance without explanation, an inference
of negligence.    We have been unable to find any such condi-
tion here.    Indeed we see nothing more than the fact of the

breaking of the bolts which under the circumstances of this case, it seems to us has no more probative force to establish negligence than the mere explosion of a boiler or the breaking of a chain. The talking facts are absent.

But it was also contended that the jury was entitled to infer negligence from a want of inspection. There can be no doubt of the general rule which requires the employer, after providing proper and safe machinery to supervise, examine and test it as often as custom and experience require. *Thompson on Negligence*, 984. The difficulty, however, in this case is that assuming that the defendant failed in the duty of inspection there is an absence of all proof that the defect, if there was one, could have been discovered if an inspection had been made, and the burden is upon the plaintiff to supply such proof.

It is possible to infer from the nature of this accident that the break resulted from a defect in the materials supplied by the defendant, or that it was caused by an improper and negligent adjustment of the machine by the foreman who was a fellow workman of the plaintiff. It was the duty of the plaintiff if he relied on failure to inspect to have offered some testimony which would have justified the jury in finding that the defect causing the injury was one which could have been discovered by the usual and ordinary methods of inspection commonly adopted by those in the same kind of business which was conducted by the defendant. "Absolute safety is unattainable and employers are not insurers. They are liable for the consequences, not of danger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business." *Bailey, Master's Liability*, p. 23. There is nothing in the testimony from which it could be inferred that the defect was discoverable, and until such evidence was produced the jury could not have properly found that a failure to inspect was the cause of or contributed to the happening of the accident.

But in addition to this view it was also forcibly suggested by defendant's counsel that the duty of inspection

does · not extend so far as to require the employer to attend to the proper adjustment of the bolts, nuts and knives of the moulding machine which was in use when the plaintiff was injured, and that, therefore, if the break and resulting flying off of the knife was the result of such faulty adjustment by a fellow workman, there can be no recovery. We have pointed out the fatal lack of testimony to show whether the accident was caused by defects or faulty or imperfect adjustment. While this proposition is supported by authority, it would seem to be reasonably clear upon general principles. It is shown by the evidence that the machine here in question had to be adjusted from time to time according to the particular work to be done and that this adjustment was incident to the ordinary use of the machine. This duty was performed by the witness Koeble, who it is conceded was a fellow workman of the plaintiff—and it would seem to be clear that if the master is bound to see that these adjustments are carefully and skillfully made the rule which holds that the employer is not responsible for injuries caused by the negligence of a fellow servant might as well be abrogated altogether. The general rule regulating the employer's duty relating to such adjustments is thus expressed in sec. 23 *Bailey's Personal Injuries, &c.* "The duty of the master to see to it that the machinery furnished for the use of his servants is reasonably safe does not extend so far as to require him to attend to the proper regulation of those parts which necessarily have to be adjusted in the course of their use, and with regard to the particular work to be done, and the adjustment of which is incident to the ordinary use of the machine." It was so held in *Eichler* v. *Hanggi*, 40 Minn. 263; *Burns* v. *Sennett*, 99 Cal. 363; *McCampbell* v. *C. & S. Co.*, 144 N. Y. 555. In *McGinty* v. *Alhot Reservoir Co.*, 155 Mass. 183, the injury was caused by the falling or pulling up of a post to which one of the guy ropes of a derrick was attached. The Court (MORTON, J.), said that the moving and securing the derrick was one of the duties of the workmen and connected with and a part of the work in which they were engaged. It was part of their duty to

put down the post, and if there was any negligence in the manner in which it was placed or in selecting the place and mode of adjustment of the various parts of the derrick, it was their negligence and not the negligence of the master. There are other cases to the same effect, but we do not deem it necessary to multiply authorities, because, as we have said, the proposition seems to be clear upon reason and general principles.

It was suggested on behalf of the plaintiff that it was the duty of the defendant to have tested the bolts and nuts before using them. But, if as we have said, the defendant was not bound to inspect this adjustable machine, to provide against a faulty adjustment, we think it performed its duty when, as shown by the uncontradicted testimony in the case it exercised reasonable care in selecting the machine and the various adjustable appliances used with it. It was not suggested by the plaintiff what kind of a test, other than the actual use, could have been made. If it had been shown by the evidence that there was a usual and ordinary way commonly adopted by persons using like machinery, and that the defendant had failed to use such a precaution, the jury might have been properly permitted to infer negligence. The practical test relied on in this case was the actual use. It was said in *Stringham* v. *Hilton*, 111 N. Y. 197 : "The same machine was continued in use for several years. When used with ordinary care there was no reason to suppose harm or mischief could result." " This fact," said the Court, " brings the case directly within the rule that when an appliance or machine *not obviously dangerous* has been in daily use for a long time and has uniformly proved adequate and safe, its use may be continued without imputation of negligence." It may be that the jury was of opinion that in spite of the fact that the defendant used due care to supply safe and proper machinery and appliances, and careful and competent fellow servants, yet it was liable if it failed to make some test unknown to them or to it. " No jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business, is a negli-

gent way, for which liability shall be imposed." *Bailey's Master's Liability*, p. 24. *Non constat* that there was any other test than that of actual use, commonly adopted, after purchasing the machinery from first-class reputable manufacturers. If any such custom prevails the burden was upon the plaintiff to offer proof of it. Juries cannot be allowed to set up a standard which shall in effect dictate the customs or control the business of the community. *Titus* v. *Railroad Co.*, 136 Pa. 626. *Bailey's Master's Liability, supra.*

It follows that the judgment appealed from must be reversed without a new trial.

*Judgment reversed with costs.*