# BALTIMORE AND OHIO RAILROAD COMPANY *vs.* WILLIAM H. WILSON.

*Verdicts: amount; province of courts; appeals. Master and servant: duty of master; not insurer; safe place for working; contractor; fellow-servant doctrine; res ipsa loquitur. Courts: duty to interpret and administer the law.*

The amount of a verdict is not for the Court of Appeals. It is for the jury to determine, on proper instructions from the Court; or it is a question for the Court below upon a motion for a new trial.                                      p. 205

A master is bound to provide a reasonably safe place for the servant to work in.                                      p. 208

A railroad company who employes a contractor to do work for it, can not thereby relieve itself from its legal obligation to provide a reasonably safe place for its servants to work in.                                      p. 208

Where a railroad company was engaged in having a new bridge built across a large river and had provided a temporary structure of high elevation required to sustain heavy weights and vibrations and where an agent whom it had stationed there as watchman was injured by the sudden collapse of the structure, it was *held* that evidence that one of the supports had buckled, or was out of plumb, or had sprung, and that this condition had been increasingly manifest up to the time of the accident, was admissible in evidence, and if believed by the jury would warrant an inference that the accident was due to the negligence of the defendant corporation in not providing a reasonably safe place for the plaintiff to perform his duties.                    p. 208

A prayer in such a case which seeks to have the jury instructed that the defendant's obligation depends upon whether it failed to use due care in planning the new bridge, or failed to inspect the work properly, and ignores the question whether the plans were followed and whether the company was negligent or not in selecting the A. B. Company to perform the work, is erroneous.                    p. 208

A master is not an insurer of his servant's safety, but his duty towards him is non-delegable.                    p. 209

Whether negligence in such a case was the original negligence in the construction of the work by one properly to be classified as a fellow servant, or whether it was the negligence of the defendant in inadequate inspection was a question for the jury to determine from the evidence in the case.

p. 210

For the reconstruction by a railroad of a large bridge across a wide river there had been put up a construction of false work especially designed to bear great weight and resist vibration necessarily incident to passage of trains over it; this false work had been constructed under the direction of eminent engineers and had been in actual use for several months, when it suddenly collapsed, injuring severely a watchman who had been stationed on the work by the railroad company; there was no adequate explanation offered by the defense as to what had caused the collapse. *Held,*

that this was not a case to which the doctrine of *res ipsa loquitur* is to be applied.                    p. 210

In cases between master and servant, the jury should not be allowed to find, from the simple fact of the happening of an accident, that there was negligence or unskillfulness.    p. 210

It is the policy of the courts of Maryland to interpret and administer the law, rather than to make it.        p. 212

*Decided January 11th, 1912.*

Appealed from the Circuit Court of Queen Anne's County (PEARCE, C. J., ADKINS and HOPPER, JJ.), where a judgment was entered up in favor of the plaintiff for $20,000.

The following are the prayers which were offered by the plaintiff and the defendant, respectively, with the action of the lower Court on the same:

*Plaintiff's 1st Prayer*—The plaintiff prays the Court to instruct the jury, that if they find from the evidence that the plaintiff was employed by the defendant, the Baltimore and Ohio Railroad Company, to work on the bridge as watchman, as testified to by him, then it was the duty of said defendant to use all reasonable care to provide and maintain safe, sound and suitable structure and instrumentalities and place; and it must not expose the plaintiff to risks other than those incident to his employment. (*Rejected.*)

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to instruct the jury, that if they shall find from the evidence that the bridge of the defendant, the Baltimore and Ohio Railroad Company, mentioned in the Declaration was, at the time of the injury complained of, being reconstructed and changed and altered from a single track to a double track by the other defendant, the American Bridge Co., for the Baltimore and Ohio Railroad Co., and at the same time, and during the work of reconstruction the traffic of said railroad was being carried on and over said bridge, to the knowledge

of said American Bridge Co., and with its approval; and further find that a span of said bridge fell precipitating him, the plaintiff, to the ground, about 90 feet below thereby injuring the plaintiff, who was employed by said defendant, the Baltimore and Ohio Railroad Co. (if the jury shall find such employment) while in the scope of his employment and without negligence on his part, then the falling of the span of said bridge, if the jury find the same, is *prima facie* evidence of negligence on the part of said defendant. (*Rejected.*)

*Plaintiff's 2½ Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the bridge of the defendant, the Baltimore and Ohio Railroad, mentioned in the Declaration, or a part thereof, fell, thereby injuring the plaintiff, who was employed by said defendant (if the jury find such employment) while acting in the scope of his employment and without negligence on his part, then the falling of said bridge or a part thereof, if the jury find the same, is *prima facie* evidence of negligence on the part of said defendant, the said B. & O. R. R. Co. (*Granted.*)

*Plaintiff's 2¾ Prayer.*—The plaintiff prays the Court to instruct the jury that if they shall find from the evidence that the bridge of the defendant, the Baltimore and Ohio Railroad Co., mentioned in the Declaration, was at the time of the injury complained of being reconstructed, changed and altered from a single track to a double track by the other defendant, the American Bridge Co., for the said Railroad Co., and at the same time and during the work of reconstruction, the traffic of said railroad was being carried on and over said bridge, and further find that a span of said bridge while one of the freight trains, loaded with coal, of the defendant, said Baltimore and Ohio Railroad Co.. was on said bridge crossing, fell, precipitating him to the ground, about 90 feet below, thereby injuring the plaintiff who was employed by said Baltimore and Ohio Railroad

Co. (if the jury find such employment), while acting in the scope of his employment and without negligence on his part, then the falling of the span of said bridge, if the jury find the same, is *prima facie* evidence of negligence on the part of said defendant, the Baltimore and Ohio Railroad Co. (*Rejected.*)

*Plaintiff's 3rd Prayer.*—That if the jury find for the plaintiff, they are, in estimating the damages, at liberty to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition, in consequence of said injuries and whether the said injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those pursuits and employments for which, in the absence of said injuries, he would have been qualified, and also the physical and mental suffering to which he was subjected by reason of said injuries and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries which the plaintiff has sustained. (*Granted.*)

*Plaintiff's 4th Prayer.*—That if the jury find for the plaintiff against the defendants, or either of them, they are, in estimating the damages, at liberty to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition, in consequence of said injuries and whether the said injuries are in their nature permanent and how far they are calculated to disable the plaintiff from engaging in those pursuits and employment, for which, in the absence of said injuries, he would have been qualified and also the physical and mental suffering to which he was subjected by reason of said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries which the plaintiff has sustained. (*Rejected.*)

*Plaintiff's 6th Prayer.*—The plaintiff prays the Court to instruct the jury, that if they find from the evidence that the plaintiff was employed by the defendant, the Baltimore

and Ohio Railroad to work on its bridge as watchman as testified to by him, then it was the duty of the defendants to use all reasonable care to provide and maintain safe, sound and suitable structure and instrumentalities and place; and the plaintiff has the right to assume that the structure, instrumentalities and place were reasonable, safe and sound. (*Rejected.*)

*Plaintiff's 7th Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the plaintiff was employed by the defendant, the Baltimore and Ohio Railroad Company, to work on its bridge, as watchman as testified to by him, then it was the duty of said defendant to use all reasonable care to provide and maintain safe, sound and suitable structures and instrumentalities and place for the plaintiff *for the plaintiff* to do the work he was employed to do, and the plaintiff had the right to assume that the place, structure and instrumentalities were reasonable safe. (*Granted.*)

*Plaintiff's 8th Prayer.*—In determining whether the plaintiff's injuries were due to the defendants, the B. & O. R. R. Co.'s negligence, the jury may consider the fact of the fall itself, the manner of the fall, the time of the fall, as well as the construction and maintenance of the towers and bents in point of workmanship, and all other facts in evidence, which may, in their judgment, throw light upon the cause of the accident. (*Granted.*)

---

*Defendant's Prayer "A".*—The defendant prays the Court to instruct the jury that if they find that the plaintiff was employed by the B. & O. as watchman on the railroad or bridge passing over the Susquehanna river, and that the bridge or false work gave way or fell while a train was passing over the same, causing the injury complained of, then and in that event the mere falling of the bridge is not sufficient evidence of negligence to entitle the plaintiff to recover from either of the defendants. (*Rejected.*)

*Defendant's 1st Prayer.*—The defendant, the Baltimore and Ohio Railroad Company, prays the Court to instruct the jury that there is no legally sufficient evidence to entitle the plaintiff to recover from it, the Baltimore and Ohio Railroad and therefore, their verdict must be for the said defendant.    (*Rejected.*)

*Defendant's 2nd Prayer.*—The defendant, the Baltimore and Ohio Railroad Company, prays the Court to instruct the jury, that the burden of proving negligence on the part of the defendant, the Baltimore and Ohio Railroad Company, is upon the plaintiff, and that the plaintiff is not entitled to recover from the said company, unles the jury find that the said company was guilty of negligence either in the construction of inspection or maintenance of the false work, the collapsing of which is claimed to have caused the accident.    (*Granted in connection with Plaintiff's Eighth Prayer.*)

*Defendant's 3rd Prayer.*—To entitle the plaintiff to a verdict against the Baltimore and Ohio Railroad Company, in this suit, he must offer evidence tending to prove either:

1. That the said railroad did not use due care in planning the reconstruction of the Susquehanna bridge on which the accident proven by the witnesses took place, or in inspecting said bridge during the progress of such work; or

2. That the said railroad did not use due care in selecting and employing the American Bridge Company to reconstruct said bridge.

And that there is no evidence in this case tending to prove either of said facts, and therefore their verdict must be in favor of the said railroad company.    (*Rejected.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John E. Semmes, Jr.,* and *John E. Semmes* (with whom was *Jesse N. Bowen* on the brief), for the appellant.

*John S. Young* (with whom were *M. H. Fahey, Albert Constable* and *J. H. C. Legg* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The present case derives its chief importance from the fact that the jury before which it was tried rendered a verdict in favor of the plaintiff for twenty thousand dollars, one of the largest verdicts in an action for damages for personal injuries rendered in this State. But with the amount of the verdict this Court has nothing to do. That was a question for the jury, if the case made out was one which it was proper to submit to a jury, under suitable instructions, and for the Court in which it was tried upon the motion for a new trial.

The questions of law upon which the case is brought before this Court are few in number, but one of them at least is of considerable importance.

The Fourth Bill of Exceptions was taken to the action of the trial Court in its rulings upon the defendant's prayers, the first of which was to the effect that there was no legally sufficient evidence to entitle the plaintiff to recover. As this went to the entire case of the plaintiff, a succinct statement of the facts as testified to by the witnesses becomes germane to the consideration. The Baltimore and Ohio Railroad had a single track bridge over the Susquehanna River which was being reconstructed and converted into a double track steel bridge. This involved the taking down of the previously existing structure. For this purpose and the further purpose of continuing the operations of the railroad, there was erected false work to support the track while the work was proceeding, and which false work was designed to bear the weight of the new bridge during the progress of the work, together with the machinery necessarily employed in the construction. The plan was that the bridge when completed should rest upon piers built of concrete, the spans between the several piers being of various lengths. The main span between the Cecil county end of the bridge

206   BALTO. and OHIO R. R. CO. vs. WILSON.

Opinion of the Court.                                    [117

and Watson's Island was to be 337 feet in length. To sup-
port the construction of this span and the track of the rail-
road during the time of construction, two towers were
erected. The manner of erecting these towers was: First,
double rows of piles were driven in the bed of the river
thirty feet apart, each row containing twenty-eight piles.
The rows of piles were parallel with the general direction of
the river, and at apparently a right angle with the general
direction of the bridge and railroad to be constructed above.
These piles were then capped with heavy timber and upon
this capping were erected uprights of 12 by 12 timbers,
the outer of which or possibly all, were battered, that is,
inclined so as to resist and distribute the strain from above.
The upper ends of these uprights were in turn capped and
the same method of construction continued until the desired
height was reached, so that the railroad tracks were elevated
about ninety feet above mean tide. In addition to the
battering, the uprights were braced by longitudinal and X
braces.

After the construction of these towers the trains of the
defendant company were run upon and over this false work
without accident from about the middle of July, 1908, until
the 23rd of September. Shortly after 6 o'clock on that morn-
ing a passenger train, west bound, passed over the bridge.
This train passed the plaintiff, who was a day watchman
on the bridge employed by the defendant company, not far
from the west end of the bridge. The plaintiff after this
train had passed continued on across the bridge to the east
end, and then started to return across the bridge. He had
proceeded but a short distance when he met an east-bound
freight. The locomotive and two or three cars of this train
passed him, when the structure collapsed, carrying down
the false work and cars, together with the plaintiff, ninety
feet. By this fall the plaintiff was severely injured, and it
is to recover for the injuries so sustained that this suit is
brought.

BALTO. AND OHIO R. R. CO. vs. WILSON.   207

Md.]                    Opinion of the Court.

The plaintiff called as witnesses Joseph Brandt, who had worked at bridge building for about ten years; Murray Wood, who had been similarly employed between five and six years; Christopher Burns, also a bridge worker for five and a half years; George Horner, similarly employed for sometime, and Carroll Boyd, also a bridge worker for about six years. After testifying to the method of constructing the false work, they gave evidence which may be epitomized as follows, without quoting the precise questions and answers of each witness: On the afternoon of September 22nd, for the purpose of driving a bolt home in the new steel work, a portion of a rail weighing in the neighborhood of 1,200 pounds was used as a rammer. While being so used the rail or rammer broke and a piece of it fell, striking and cutting off an end or corner of one of the caps below. This it was subsequently testified by the witness Reynolds, who was a foreman on that part of the work, and who was called by the defendant, had no effect upon the strength of the tower. But it was further testified to by the witnesses for the plaintiff, that the timbers on one of the towers were out of plumb, by some that they had buckled, and that this condition became worse as time progressed, and that it had increased to such a degree that it was the occasion of conversation among the men employed on the work as they were returning home the evening before the accident, and the attention of the foreman Reynolds was called to it. Most of the witnesses place the point of what they describe as buckling at the cap where the piles and the first set of the 12 by 12 timber uprights came together. That these workmen were correct is corroborated by the witness Reynolds, who testified that the piles did lean out, though he denied that there had been a technical buckle, and he also testifies that they had been in this condition from the time they were first capped, but insists that the safety of the structure was not affected thereby.

For the purpose of the prayer now being considered, the evidence of the witness of the defendant, Reynolds, is imma-

terial and is referred to only to show that the conditions testified to by the plaintiff's witnesses, who were practical men, rather than experts, is amply supported.   The rule is too well settled to require any citation of authorities, that a master is bound to provide a reasonably safe place for the servant to work in.   The plaintiff's evidence tended to show that the place provided was upon a temporary structure of high elevation, required to sustain heavy weights and vibration, where one of the supports had buckled, or was out of plumb, or had sprung, and that this condition had been increasingly manifest up to the time of the happening of the accident.   This evidence, if believed by the jury, would clearly have warranted an inference that the accident was due to the negligence of the defendant in failing to provide a reasonably safe place for the plaintiff to perform his duties, and the refusal of the trial Court to grant the first prayer of the defendant was entirely correct.

The defendant's third prayer was likewise properly refused.   It required the jury to find either that the Railroad Company did not use due care in planning the reconstruction of the bridge, or in inspecting the work during its progress, entirely ignoring the element that the bridge was or should have been constructed in accordance with the plans; or that the railroad company did not use due care in selecting the American Bridge Company to reconstruct the bridge.   The railroad company could not in any such manner relieve itself of its legal obligation to provide its own servant, whom it placed on the work, with a reasonably safe place in which to do his work.

Nor is it perceived how the defendant was in any way injured by the granting of its second prayer in connection with the eighth prayer of the plaintiff.   This prayer of the plaintiff has been repeatedly passed on and approved by this Court, and the effect of the joining to it of the defendant's second prayer was to instruct the jury more precisely as to the burden of proof in respect thereto.

The plaintiff's third prayer was upon the measure of damages in the event that the jury found a verdict for the plaintiff, and his seventh prayer defined the measure of care or duty owed by the master to the servant and were both in the form sanctioned by long usage.

The correctness of the granting of the prayer in favor of the American Bridge Company, by which a verdict was directed in favor of that corporation has not been questioned in this Court, and that exception is to be regarded as having been waived.

There remain for consideration plaintiff's prayer numbered 2½, and defendant's prayer A, both of which raise the same question, namely, whether in a case like the present, the doctrine of *res ipsa loquitur* is applicable. That it can be invoked on behalf of the plaintiff is the theory of his prayer, and that it can not be, is the theory of the defendant's prayer. In the argument before this Court the appellant sought to justify its position by three propositions, first, that in the relation of master and servant, the master is never an insurer of the servant's safety, and that he has performed his whole duty when he has exercised reasonable care in providing a safe place for the servant to work in, and exercised proper inspection with regard to the place; and, secondly, that if there was negligence in the present case, it was the negligence of a fellow servant for which the master can not be held to respond in damages; and, thirdly, that the doctrine of *res ipsa loquitur* can never apply in a case arising between master and servant. In regard to the first of these contentions it is sufficient to say, that while it is perfectly true that the master is not an insurer of the servant's safety, his duty as regards the servant is non delegable, and the question whether there was or was not adequate inspection under the circumstances testified to in this case, was rather a question for the jury than a question of law for the Court. The second proposition of the appellant assumes that there was negligence shown in the case, but claims it to have been the negligence of a fellow servant.

But whether the negligence was the original negligence in the construction of the tower by one properly to be classed as a fellow servant, or whether it was the negligence of the defendant in inadequate inspection, was also a question of fact for the jury to determine from the evidence. The rule applicable with regard to the negligence of the fellow servant in a case between master and servant, where there is an intervening contractor, has been so recently fully stated in the able opinion by JUDGE THOMAS, in *Penn Steel Co.* v. *Nace,* 113 Md. 460, that is not now necessary to repeat it, and it will be sufficient to ascertain whether the Court below was correct in instructing the jury as was done by prayer No. 2½, that "the falling of said bridge or a part thereof, if the jury find the same, is *prima facie* evidence of negligence on the part of said defendant, the said B. & O. R. R. Co."

By the plaintiff's prayer No. 8 joined with the defendant's second prayer, the jury were told that the plaintiff was not entitled to recover unless the jury found that the said company was guilty of negligence, either in the construction of, inspection or maintenance of the false work, the collapsing of which is claimed to have caused the accident. We thus have the jury told in one instruction that the mere falling of the false work was *prima facie* evidence of negligence, and in another that the plaintiff's right to recover could not be maintained unless the jury found the company guilty of negligence. It is, of course, evident that if the jury found positive acts of negligence, either in the construction, inspection or maintenance of the false work, no harm was done to the defendant by the granting of the plaintiff's prayer No. 2½, while on the other hand, if the jury found no evidence of negligence except the accident itself, then serious injury resulted to the defendant from the two instructions.

The evidence in this case shows the construction of false work for a large and very heavy railroad bridge, specially designed to bear great weight and resist the vibration necessarily incident to the passage of the trains over it, con-

structed under the direction of eminent engineers and in actual use for about two months, suddenly collapsing, failing to accomplish the very end for which it was planned and built, and for which collapse no adequate explanation has been offered by the defense, though one is suggested in the evidence of the plaintiff, in that the supports of one of the towers were out of plumb, or had sprung or buckled. In the case of *Howser* v. *C. & P. R. R. Co.,* 80 Md. 146, what would constitute a proper case for the application of the doctrine of *res ipsa loquitur* was thus stated by JUDGE ROBERTS, "where the thing is shown to be under the management of the defendant or his servant and the accident is such as in the ordinary course of things does not happen if those who have the proper management, use proper care, it affords reasonable evidence *in the absence of explanation by the defendant* that the accident arose from want of care." This was said in a case, not between master and servant, but where some cross ties fell from a passing train upon the plaintiff, who was not on the right of way of the railroad company, and severely injured him, and in which case no evidence whatever was attempted to be introduced by the defendant to show care either in the loading of the ties, or inspection of them after being loaded; and among the authorities relied on in that case was *Kearney* v. *London, Brighton and South Coast R. W.,* L. R. 5, Q. B. 411, which case was decided by a divided Court.

In a number of states, and especially in the Western States, there has been a marked disposition to extend the idea that negligence was deducible from the fact of an accident without any positive evidence of negligence on the part of the defendant. This has been in part due to the adoption of what are known as "workman's compensation acts," and in some states without the intervention of the legislature, courts have shown an inclination by their decisions to engraft such a doctrine into their law. That has not, however, been the policy of this State, and decision after decision of this Court might be cited to illustrate this

fact. It has always been the policy of the Courts of Mary-
land to interpret and administer the law rather than to make
it, and if a change is to be made in our settled policy, it
should be by the law-making branch of the State, not by a
usurpation by the judicial branch of legislative functions.

Two cases were cited and relied upon by the appellee as
tending to support the theory that the mere happening of
the accident constituted a *prima facie* case of negligence,
yet each of them when closely examined, disclose acts of
negligence testified to, sufficient to have carried those cases
to the jury. The class of cases in which the doctrine of *res
ipsa loquitur* is applicable is under our decisions very much
restricted, but it is not meant by this opinion to say that
cases may not arise where it can be properly invoked as
between master and servant, but a reference to some of our
cases will show that this case does not come within that class.
Thus in the case of the *Winkelman & Brown Drug Co.* v.
*Colladay,* 88 Md. 78, the doctrine was invoked, and the
defendant offered no evidence whatever, but in passing upon
that case this Court expressly said, that "apart from the
presumption of negligence there was evidence, if the jury
believed it, tending to prove negligence on the part of the
company."

And in the *South Baltimore Car Works* v. *Schaefer,* 96
Md. 88, this Court refused the right of the plaintiff to
recover, where the sole evidence of negligence was the fact
that a sharp knife on a rapidly revolving cylinder broke and
flew off, injuring the plaintiff; and in *Stewart & Co.* v. *Har-
man,* 108 Md. 446, the application of the doctrine was
denied, where the sole evidence of negligence was that a
large pane of plate glass fell upon and injured the plaintiff;
and also in the *Elevator Co.* v. *Neal,* 65 Md. 438, in a
very able opinion by the late CHIEF JUSTICE ALVEY, it was
said that "the jury should not have been allowed to infer
from the simple fact of the happening of the accident, that
there was negligence or unskillfulness."

In view of these repeated decisions, it appears to this Court that there was error both in granting plaintiff's prayer No. 2½, and in refusing defendant's prayer A, and that the judgment must therefore be reversed; but inasmuch as there was evidence from which the jury might properly have found negligence in construction, or neglect or inadequate inspection, the case will be remanded for a new trial.

> *Judgment reversed, and case remanded for a new trial, with costs to the appellant.*