(Filed 21st June, 1887.)

---

## THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY *vs.* JOHN H. FRONK.

*Railroad—Private Crossing—Failure to ring Bell or blow Whistle—Evidence—Negligence.*

The failure to ring the bell or blow the whistle of a locomotive at a private crossing in the open country, guarded by gates on either side, where there was no station for passengers or freight, nor any

side track, and where no trains ever stopped; where for more than twenty years no whistle had ever been sounded, nor whistling post put up, nor any request therefor made by the owners of the property entitled to use the crossing; and where the line of the railroad on either side was nearly straight, is not evidence to go to the jury of culpable negligence on the part of a railroad company.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and IRVING, J.

*William J. Jones*, and *Alexander Evans*, for the appellant.

There was no obligation on the appellant to blow a whistle or ring a bell at this crossing. It was and had been always a mere farm crossing, used not by the public, but exclusively by the owners of the farm and their servants and employés, and such chance persons as might occasionally come there on their business. It was a crossing protected by gates, and so known to the engineman who had charge of the particular train with which the collision occurred. It was in no sense a public crossing, nor was this plaintiff one of the public. There had been no acquiescence by the defendant in the use of the road by the public which cast upon it the duty of giving notice, and the plaintiff was to all intents and purposes a servant of the owner of the land, bound to use it as the owner used it, by closing the gate when he went through, and opening it as he returned. *Sweeny vs. Old Colony R. R.*, 10 *Allen*, 368; *Barry vs. N. Y. Central, &c., R R. Co.*, 92 *N. Y.*, 289; *Cordel vs. N. Y. Central, &c., R. R. Co.*, 70 *N. Y.*, 119.

The aggregated histories of railroad accidents at crossings, do not show a more foolhardy act. *P. R. R. Co. vs. Beale*, 73 *Penna. State*, 504; *Central R. R. Co., of New*

Phila., Wilm. & Balto. Railroad Co. *vs.* Fronk.

*Jersey vs. Feller*, 84 *Penna. State*, 226 ; *Cogswell vs. Oregon, &c., R. R. Co.*, 6 *Oregon*, 417 ; *Laicher vs. New Orleans, &c., R. R. Co.*, 28 *La. An.*, 320 ; *Ormsbee vs. Boston, &c., R. R. Corp.*, 14 *R. I.*, 102.

To say, as the Court did in effect say, by their refusal to grant the defendant's fourth prayer, that a man deaf from physical infirmity and blind because of the fog and smoke, is to exercise no more care than a man in possession of all his faculties in a bright sunlight, is contrary to the settled law that the greater the degree of danger, the greater the caution necessary to be exercised by the traveler on the highway. *Cleveland, &c., R. R. Co. vs. Terry*, 8 *Ohio State*, 570 ; *Penn. R. R. Co. vs. Beale*, 73 *Penn. St.*, 504 ; *Central R. R. Co. vs. Feller*, 84 *Penn. St.*, 226.

*Albert Constable*, for the appellee.

The defendant placed its main defence upon the fact that the road on which the plaintiff was travelling was not a public county highway.

This defence will not avail to defeat the action—*Barry vs. New York Central, &c., R. R.*, 92 *N. Y.*, 290; *Taylor vs. Delaware and Hudson Canal Co.*, 113 *Pa. St.*, 162; *Cordell vs. New York Central, &c., R. R.*, 64 *N. Y.*, 535 ; *Dublin, Wicklow and Wexford Ry. Co. vs. Slattery, L. R.*, 3 *Appeal Cases*, 1155 ; *Balto. & Ohio Railroad Co. vs. Owings*, 65 *Md.*, 502.

Even were the plaintiff a *mere* licensee, the defendant would be responsible for any act of *misfeasance*. *Lamore vs. Crown Point Iron Co.*, 101 *N. Y.*, 395; *Tebbutt vs. Bristol and Exeter Ry. Co., L. R.*, 6 *Q. B.*, 73.

The appellee in his testimony says, "after passing the gate you can see some distance down the road, but could not do so that morning, as it was a dark, foggy day, and smoke from the charbon works had settled down and hung along the railroad at a point where a ravine and marsh intersect the railroad, so that you could not see

down the railroad more than from one hundred to a hundred and fifty feet." These facts bring the case within the decision of this Court in *Northern Central R. R. Co. vs. State, use of Burns,* 54 *Md.,* at page 126, where this Court remarked, that it had been properly decided in *Skelton's Case, L. R.,* 2 *C. P.,* 631, that there are many cases in which a railway company is bound to take additional precautions on account of special dangers. In that case this Court approved of *James vs. Great Western Ry. Co.,* cited in a note to *Skelton's Case, L. R.,* 2 *C. P.,* at page 635, where the accident occurred on a dark foggy morning, and the railway was also obscured by the smoke from neighboring spelter works.

No efforts made by a plaintiff to extricate himself from peril, into which he had got without negligence upon his part, will disentitle him to recover. *Penn. Railroad Company vs. Werner,* 89 *Pa. St.,* 59; *Coulter vs. Am. Mer. Union Express Co.,* 56 *N. Y.,* 585; *Chicago, &c., Railroad Co. vs. Miller,* 46 *Mich.,* 542; *North Eastern Ry. Co., vs. Wanless, L. R.,* 7 *H. L.,* 12; *Tyler vs. New York, &c., R. R. Co.,* 137 *Mass.,* 238, 242.

MILLER, J., delivered the opinion of the Court.

At the close of the testimony the defendant company asked the Court to instruct the jury that there was no evidence legally sufficient to show that the plaintiff was injured by its negligence or that of its agents, and he cannot therefore recover.

There can be no serious controversy as to the legal principles applicable to a case like this. The *onus* of proving that the injury was caused by the negligence of the company is on the plaintiff, and if there be no evidence legally sufficient for that purpose the action must fail. It has been so often decided by the Appellate Court of this State that the legal sufficiency of evidence is a question of law for the Court that it is useless to cite

Phila., Wilm. & Balto. Railroad Co. *vs.* Fronk.

the decisions, and such is the settled law in every State of the Union as well as in England. As was said by Lord Chancellor CAIRNS in a similar case (*Metropolitan Railway Co. vs. Jackson, Law Rep.,* 3 *Appeal Cases,* 197), "The Judge has a certain duty to discharge, and the jurors have another and a different duty. The Judge has to say whether any facts have been established by evidence from which negligence *may be reasonably* inferred; the jurors have to say whether from these facts, when submitted to them, negligence *ought* to be inferred, and it is of the greatest importance in the administration of justice that these separate functions should be maintained, and should be maintained distinct. It would be a serious inroad on the province of the jury, if, in a case where there are facts from which negligence may be reasonably inferred, the Judge were to withdraw the case from the jury upon the ground that, in *his opinion*, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever. To take the instance of actions against railway companies: A company might be unpopular, unpunctual, and irregular in its service; badly equipped as to its staff; unaccommodating to the public; notorious, perhaps, for accidents occurring on the line; and when an action was brought for the consequences of an accident, jurors, if left to themselves, might, upon evidence of general carelessness, find a verdict against the company in a case where the company was really blameless. It may be said that this would be set right by an application to the Court *in banc*, on the ground that the verdict was against evidence; but it is to be observed that such an application, even if successful, would only result in a new trial; and on a second trial, and even on subsequent trials, the same thing might happen again."

Phila., Wilm. & Balto. Railroad Co. *vs.* Fronk.

This accident happened on the 30th of May, 1885, about nine o'clock in the morning, while the plaintiff was driving an empty two-horse wagon, rigged for carrying charcoal across the railroad tracks. The train which struck the wagon was the morning *express* passenger train from Baltimore to Philadelphia. This train stopped but twice between the two cities, was running at the rate of 50 or 55 miles per hour, and we think it clear that unless the failure of those in charge of it to *whistle or ring the bell* when the train approached the place of the accident, was evidence to go to the jury upon the question of negligence on their part, there was no evidence whatever to sustain the action. What, then, is the proof on this subject?

The crossing where the accident occurred was undoubtedly a *private* farm crossing and not a *public* highway. The farm was a large one lying between the county road and the river, and, as usual, there was a private lane or road from the county road to the farm house for the convenience of the owners of the property. When the railroad was originally located and constructed, it passed between the *barn* and the *house*, across this private lane, and the company placed planks between the rails on their tracks for the accommodation of those using the crossing, and presumably, also, for the protection of their rails. *Gates* were erected across this lane on *both sides of the track* which were *usually kept closed.* There was also a gate at the county road, also closed, but in late years it seems to have been left open. Formerly, and for a short period, there was a *fishery* on the river shore, and the way to it was down this lane which was generally used during the *fishing season* by persons going there. But this was more than fifteen years ago, and the farmer who then and now lives in the farmhouse, says, that after 1871 "it was used only by me, and persons coming to see me." In short there is no proof that (other than for this brief

period, prior to 1871), this road has ever been used by any other person, than the owners of the property and their employés, and for their private and exclusive purposes.

The McCullough Iron Company bought the whole farm in February, 1884, and in the following spring put up works for burning charcoal on that part of it which lies south of the railroad. They used this lane in hauling materials from the county road for the construction of these works. They commenced burning charcoal in September, 1884, and hauled it through this lane to the county road, and thence to their furnaces at the village of North East. This, of course, occasioned an increased use of the lane and crossing, but it was still a private lane and a private crossing. The proof is clear and uncontradicted, that since the purchase of the farm by this company, and the construction of these works, the lane "was used only by people going to their works and to their farm buildings." One of the witnesses says that after the works were put up and there was so much hauling, he told "one of the officers of the iron company that the railroad company had never blown any whistle at this crossing, and that he ought to have the railroad company put a whistling post there, or some one would be killed there some day." But no request for a whistling post was ever made, nor is there any proof that the extent of the increase of the use of the crossing by reason of this hauling, was ever, prior to this accident, brought to the knowledge of any of the general officers of the company or to any of its agents or employés engaged in the running of its passenger trains.

The fact that no whistle had ever been sounded for this crossing is conceded. Indeed, the plaintiff himself says he knew this when he attempted to cross the tracks, and that he also knew that the train was then due. The engineman in charge of the locomotive, and who had been running over it daily for more than twenty years, says he always supposed it was a farmer's private crossing; that he

knew there were *gates* there, but cannot say whether they were shut on this occasion or not; that he never saw any one on the crossing before; that he has seen the gates shut and cattle in the lane, and has also seen wagons standing below the crossing and supposed it was used for the charcoal works; that his orders were to whistle *at posts*, and at other times *for danger*. It also appears there was no fault on his part or that of his fireman in not keeping a proper look-out for persons on the track or for danger, and that as soon as he discovered the dangerous position of the wagon, he did everything practicable to avoid the collision. The train was running at a high, but not unusual rate of speed for express passenger trains between large cities. It was cloudy, smoky and foggy on the morning of the accident, so that the view of an approaching train was not so good as in clear weather, but there was no sharp curve in the line of the road as it approached this crossing, and the engineman had the right to assume that any one attempting to use it in such a state of the atmosphere would not do so without first ascertaining that his train had passed, or was so far distant as to make the crossing absolutely safe. Besides, such a state, cloudy, foggy and smoky weather must, in the nature of things, have often occurred before.

These are what we find to be the undisputed facts. It is therefore the case of a private crossing in the open country, guarded by gates on either side, where there was no station for passengers or freight, nor any side track, and where no trains ever stopped; where for more than twenty years no whistle had ever been sounded, nor whistling post put up, nor any request therefor made by the owners of the property entitled to use the crossing; and where the line of the railroad on either side was nearly straight. In many of the States, as well as in this, statutes have been passed requiring railroad companies to have flagmen at grade crossings or to whistle or give other signals at such

places, but in every instance brought to our attention they relate to *public* crossings. No statute, that we are aware of, has ever made such a requirement in the case of a private farm crossing in the open country and not near to any village or city.

Nor have we found or been referred to any case, either in this country or in England, in which it has been decided that the failure to whistle at a crossing like this, is evidence to go to the jury of culpable negligence on the part of a railway company. Counsel for the appellee has cited a large number of cases but they all differ widely in their circumstances from this. One case specially relied on (and it illustrates all the others) is that of *Barry vs. N. Y. C. & H. R. R. R. Co.*, 92 *N. Y.*, 289. In that case, a boy ten years of age was killed while crossing the defendant's track in the *City of Troy*, at a place where the *public* had been in the habit of crossing for more than thirty years, and where several hundred persons crossed daily with the knowledge and acquiescence of the company. The train which inflicted the injury was backing up without ringing a bell or giving any other signal of its approach, in charge of a brakeman who was standing on a platform between two cars, where he could not see persons on the track or have notice to apply the brakes in case of danger; and there can, we think, be no doubt as to the correctness of the Court's decision, that the evidence in that case justified the submission of the question of the defendant's negligence to the jury. A case decided by the House of Lords, *Dublin, Wicklow & Wexford Railway Co. vs. Slattery, L. Rep.*, 3 *Appeal Cases*, 1155, was also relied on. There the accident occurred at night and at a *way station* on the road. The party had crossed the tracks to purchase his ticket, and on his way back was caught and killed by an express train. It was a rule of the railway that the express trains should always sound a whistle on approaching this station. The defendant's witnesses swore that the whistle was sounded,

but several witnesses for the plaintiff swore they did not hear it, though they were standing in a position in which they could have heard it if it had been sounded. In this state of conflicting proof the question of negligence was left to the jury, and this ruling was affirmed by a majority of the House of Lords.

These are the strongest cases cited by counsel, and the difference between them and the case at bar is too obvious to need comment. More like it, but not more strong for the defendant company, is our own case of *Northern Central Railway Co. vs. State, use of Burns,* 54 *Md.,* 115. The proof in that case was that Mrs. Burns was killed while crossing the tracks near Woodberry, at a place where many pedestrians going to and from Baltimore were accustomed to cross. On one side of the tracks was the gate of a public park which these pedestrians used; and on the other a foot bridge over the stream to the Woodberry mills which they also used. There was, however, no public roadway there, nor any planks convenient for crossing, but there was a path on each side of the railroad. She was struck by a train going to Baltimore, and the road approached the place on a curve. The ground upon which negligence was imputed to the company was that no bell was rung or whistle sounded when the train approached the place of the accident. The proof on this subject was that it was not customary to give any such signals at that place, unless some one was seen on, or approaching the railway. The Court described the place as being in the "open country," and held that "there was no obligation on the part of the company to give the signals spoken of, and negligence cannot be imputed to the defendant if they were not given," and that it was error to submit the case to the jury upon the undisputed facts disclosed by the proof. They said that the plaintiff had failed to offer any evidence whatever of negligence on the part of defendant's agents in charge of the train, whereby the accident was caused, and reversed the judgment.

Phila., Wilm. & Balto. Railroad Co. *vs.* Fronk.

Upon a careful consideration of the facts proved, (and about which there is no dispute) we have reached the same conclusion in this case. In our opinion, the defendant's first prayer should have been granted. This is conclusive of the case, and it becomes unnecessary to consider the defence of contributory negligence on the part of the plaintiff, or any other question argued at bar.

*Judgment reversed.*

(Decided 21st June, 1887.)

ALVEY, C. J., filed the following dissenting opinion:

I regret that I am not able to agree with the majority of the Court in the opinion filed by them. In my opinion, the evidence was of a character to require the case to be submitted to the jury, and that there was no error in so submitting it to them. That the crossing was one well established, and much used by many persons, were facts shown by several witnesses, and it was and is of a nature to require caution on the part of the defendants to avoid the occurrence of accidents. Though the crossing is not of a public highway, in the legal sense of the term, yet it was provided for, and has been regularly repaired and maintained by the defendant as an ordinary crossing of its road; and since the accident complained of they have recognized the propriety, indeed, the necessity, of giving proper signals of the approach of trains to this crossing, by erecting a whistle-post at that point. There is no pretence that any signal whatever was given by those in charge of the train on the occasion of the accident, though the proof shows that the train was running at a very high and dangerous rate of speed, and that the power of vision was greatly obstructed in that immediate locality by the smoke from the neighboring charbon works. I think there was evidence of negligence on the part of the defendants, and that the jury were the proper tribunal to consider the

effect of it, as applicable to the circumstances of the case. The fact that the crossing was of a private way, as distinguished from a public highway, can certainly afford the defendant no immunity from liability for its negligence at such crossing. It was simply a question whether reasonable care had been observed by the defendants, under all the circumstances of the case, for the safety of those lawfully using the crossing at the time of the accident; and that was a question of fact exclusively for the jury. *Byrne vs. N. Y. Cent. & Hudson River R. R. Co.,* 6 *Cent. Rep.,* (*N. Y.,*) 392.

In the view taken by the majority of the Court, all question in regard to alleged contributory negligence on the part of the plaintiff, is rendered wholly immaterial in the disposition of the case. I deem it unnecessary, therefore, to make any reference to the evidence upon that subject.

(Filed 21st June, 1887.)