### Annapolis and Baltimore Short Line Railroad Company vs. John W. Pumphrey.

*Railroad Companies—Accident at a Farm crossing—Negligence—Sec. 198 of Art. 23 of the Code—Killing of Stock.*

A collision destroying a cart and killing two mules attached to it, occurred at the intersection of a railroad by a private way or farm crossing. The train which caused the injury was a delayed train running behind its schedule time, or else an extra running on no regular schedule. No bell was rung and no whistle was sounded before the engine approached the crossing. There was a curve in the road-bed which prevented a person about to cross the track from seeing an approaching train until it got within thirty or forty yards of the crossing, and likewise prevented the employé on the engine from seeing the crossing until within the same distance of it. The train was running at the rate of fifteen miles an hour. In an action against the railroad company it was HELD :

1st. That upon the above facts there was no legally sufficient evidence of negligence on the part of the defendant to be submitted to the jury.

2nd. That in such a case no inference of negligence could be drawn from the fact that an accident did happen,

3rd. That there was no statute of this State which imposed upon the defendant the duty to give signals of the approach of its trains to a private road or farm crossing.

4th. That neither did the curve in the road-bed impose upon the defendant the duty of giving signals for such a crossing.

5th. That the fact that the train was delayed or behind its regular time, was no evidence whatever of negligence.

6th. That section 198 of Article 23 of the Code which fixes upon railroad companies a liability for injuries to live stock, unless the companies show that the injury was committed without any negligence on their part, or on the part of their agents, had no relation to a case like this; but was designed to apply to cattle

Annapolis and Balto. Short Line R. R. Co. *vs.* Pumphrey.

and other live stock estray upon the track, or not under the dominion or control of an intelligent agent when injured.

APPEAL from the Circuit Court for Anne Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, BRYAN, and McSHERRY, J.

*Edward C. Gantt,* for the appellant.

*Michael Bannon,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

This suit was brought to recover the value of two mules which were killed, and a cart which was destroyed, in a collision with an engine belonging to the appellant. The accident happened at a point where a private way or farm crossing intersects the track of the railroad. As the legal sufficiency of the evidence relied on to establish the alleged negligence of the appellant is brought into question, it becomes necessary to state at somewhat greater length than would otherwise be required, the undisputed facts and circumstances adduced to prove that negligence.

In the deed by which the right of way was conveyed to the appellant through the land now occupied by the appellee "a right of way ten feet wide * * * * over the railroad * * * is reserved for the use of Charles Pumphrey, his heirs and assigns." John Hawkins, a witness produced on the part of the appellee, testified that he was employed by the appellee, and on the day of the accident was hauling manure; that he started with an empty cart from Pumphrey's house, and was

driving two mules which were harnessed to the cart; that the witness was standing up in the cart driving over the railroad track at this private crossing, and heard no whistle blow and no bell ring; that the first he knew of the train was the engine running into the cart and mules, and that the mules were killed, and the cart was broken up; that the land where the crossing was, and where the plaintiff lived, was the land of Charles Pumphrey; that the railroad at this crossing, where the team was struck, comes around a curve; that he could not see the train approaching as he drove from the house, because the railroad, in that direction, was hidden from view by a bank, but was in sight in the other direction. It was further proved that the train consisted of an engine and tender, and that no bell was rung and no whistle was sounded on approaching the crossing. It was also shown that there were then three regular passenger trains each way daily on the railroad; that the freight trains were very irregular and that the train which caused the damage was not on regular time. Owing to the curve in the road, the track could be seen for only thirty or forty yards when at the crossing. The engine was running at the rate of fifteen miles an hour. This is all the evidence in the record respecting the alleged negligence of the appellant, and when reduced to its final analysis it establishes the following facts and nothing beyond them: (1) That a collision occurred resulting in an injury; (2) That the place where it happened was the intersection of a railroad by a private way or farm crossing, and that no bell was rung and no whistle was sounded before the engine approached that crossing; (3) That the train which caused the injury was a delayed train, running behind its schedule time, or else an extra running on no regular schedule; (4) That there is a curve in the road-bed which prevents a person about to cross the tracks from seeing an

approaching train until it gets within thirty or forty yards of the crossing, and likewise prevents the employés on the engine from seeing the crossing until within nearly the same distance of it; and (5) That the train was running at the rate of fifteen miles an hour.

Assuming these facts to have been proved, do they, in conjunction with the inferences which may legitimately be drawn from them, warrant a jury in convicting the appellant of negligence? A mere *scintilla* of proof is not sufficient; there must be evidence upon which the jury might reasonably and properly conclude that there was negligence. *Baltimore & Ohio R. R. Co. vs. State, use of Savington*, 71 *Md.*, 590; *State, use of Foy, et al. vs. Phil., Wilm. & Balto. R. R. Co.*, 47 *Md.*, 87. Now, it has been repeatedly held that no inference of negligence, in cases like this, can be drawn from the fact that an accident did happen. *Frech vs. Phil., Wilm. & Balto. R. R.*, 39 *Md.*, 576; *Phil., Wilm. & Balto. R. R. Co. vs. Stebbing*, 62 *Md.*, 515. This circumstance must therefore be excluded in considering the question of imputed negligence.

There is no statute of this State which imposes upon the appellant the duty to give signals of the approach of its trains to a private road or farm crossing. Numerous cases in this State and elsewhere have held that a failure on the part of a railroad company to give proper warnings of the approach of its trains to a public highway or thoroughfare crossing is an act of culpable negligence; but we are aware of no decision which fixes upon a defendant the like consequence for omitting such warnings as to farm crossings. On the contrary it has been determined twice by this Court that no such obligation exists at all. *Phil., Wilm. & Balto. R. R. Co. vs. Fronk*, 67 *Md.*, 339; *Northern Central Railway Co. vs. State, use of Burns*, 54 *Md.*, 113. Nor does the curve in the roadbed impose upon the company the duty of giving signals

for such a crossing. The whistle and bell are intended to give warnings of danger. The more frequently they are employed the less valuable they become, because if constantly resorted to and thus made familiar they would be scarcely heeded or noticed, and they would soon cease to arrest attention. This is fully confirmed by the most ordinary observation. And they would have to be used almost uninterruptedly if their not being employed at every private crossing near a curve be treated as evidence of negligence. So the result of exacting such a duty would be that the only means of giving warnings of danger would be rendered practically valueless at the very localities where confessedly they ought to be employed. It follows that negligence can not be ascribed to the appellant on this account.

The fact that the train was delayed or behind its regular time is no evidence whatever of negligence. "It is well known that railway trains are liable to be detained by various causes, without any fault of the company, and negligence can not be imputed to it from the fact that a train may be behind the usual time." *State, use of Foy vs. Phil., Wilm. & Balto. R. R. Co.*, 47 *Md.*, 85. The train consisted of an engine and tender only. It was therefore not a passenger train, and must have been either an extra engine or an engine belonging to a freight train. If it was the latter, there is no evidence that it was not running on the freight train's schedule; and if the former, there is no principle of law which precludes a railroad company from sending extra trains or engines over its road whenever the necessities of its business may require. Most assuredly it is not negligence to do so. There is nothing, then, in this circumstance from which negligence can be properly inferred.

It is impossible to see how a railroad company can be held guilty of negligence because, in the construction of its line, it has made curves in the road-bed. There are

many conditions which render curves necessary. If the mere existence of them was held to be evidence of negligence it would be a most startling announcement indeed.

The speed of the engine was certainly moderate, and furnishes no indication of negligence.

It is thus quite apparent that no one of these independent facts is legally sufficient to prove negligence, because no one of them tends to establish that conclusion. If then no one of them tends to prove negligence can all of them together have any greater probative force or value? To answer in the affirmative is to assert that the aggregation of a number of incompetent facts is, by force of that mere aggregation, sufficient to establish a result which no one of the same facts taken by itself has even the remotest tendency to prove. This is a fallacy which is so evident that no discussion is needed to expose it.

It is undoubtedly true that a fact to be proved may be proved by establishing various collateral circumstances, more or less remote, but which still lead to the conclusion that it does exist. This is merely another way of saying that the truth of an allegation may be proved by circumstantial evidence. But it is indispensably requisite that every fact so relied on—every link in the chain of such evidence—should tend in some way to establish the fact to be proved, otherwise it will be excluded because irrelevant. Its relation to the conclusion may be slight—but there must be *some* relation.

We have seen that each of these five independent facts possesses no probative quality as to the issue of negligence now before us; and, unless some special statutory provision places this case upon a different footing, there was no evidence legally sufficient to go to the jury. To meet this the appellee insists that the suit is under *section* 198 of *Article* 23 of the Code, which fixes upon railroad companies a liability for injuries to live stock,

unless the companies show that the injury was committed without any negligence on their part or on the part of their agents. This section shifts the burthen of proof in cases to which it applies; but it has no relation whatever to a case like the one now before us. It was designed to apply to cattle and other live stock estray upon the track, or not under the dominion or control of an intelligent agent when injured.

, From what has been said it follows that the first prayer submitted by the appellant withdrawing the case from the jury ought to have been granted. It was rejected and a verdict was rendered against the company, and judgment was entered thereon and hence this appeal. For the error indicated, without reference to the other questions presented in the record, the judgment must be reversed without awarding a new trial.

*Judgment reversed.*