GIOVAMMARIA SERIO *vs.* FRANK J. MURPHY ET AL.

*Lateral Support—Injury to Building While Excavation is Made on Ad-
joining Lot—Underpinning—Negligence—Presumptions—Evidence.*

If a person, who is about to excavate his own lot in proximity to the wall
   of an adjoining house, gives reasonable notice thereof to the adjoining
   owner, the latter is bound to protect his own property and the former
   is not liable for damages caused by the excavation if the same was.
   made with ordinary care.

If in such case the wall of a building is injured in consequence of the neg-
   ligent manner in which the work of underpinning it was done by the
   owner, no action therefor lies by a tenant against the party axcavating
   the adjoining lot.

When the owner of a building endangered by a proposed excavation on
   the adjoining lot has received reasonable notice to protect his building,
   then the party making the excavation is responsible only for injuries
   caused by the actual or positive negligence in the manner of doing the
   work.

Plaintiff was tenant of certain premises in a city under a lease which obliged him to make repairs. The owner of the adjoining lot, being about to excavate the same to prepare a foundation, gave notice to plaintiff's landlord that he should protect the abutting wall of his house. The landlord employed one R. to underpin and protect his house, and while this work was being done or while the excavation of the adjoining lot was being made, the wall of the house cracked and plaintiff was compelled to vacate it. In an action by him for damages against his landlord, and R. and the owner of the adjoining lot, *Held*, that there is no legally sufficient evidence of any negligence on the part of the landlord or of R. who was employed by him to do the underpinning, and also no evidence of negligence in the manner in which the adjoining lot was excavated.

*Held*, further, that in such case negligence cannot be presumed merely because the wall cracked or fell.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Thos. C. Weeks*, for the appellant, submitted the cause on his brief.

The rule laid down in *Balto. & P. R. Co.* v. *Reaney*, 42 Md. 117 is the settled law applicable to the facts of this case.

It was so affirmed in *DeLauder* v. *Baltimore County*, 94 Md. 8. The pleadings, however, in this case, allege that the acts complained of were negligently done, and if the rule is to be limited, as in the *Shafer case*, 44 Md. 268, it is contended that sufficient evidence of negligence was here offered to be submitted to the jury, whose province it was to determine its weight and effect.

The plaintiff was entitled to have the evidence against Rippel submitted under the second count of the *narr.* There was evidence tending to prove that Rippel was the contractor; that he failed to notify the plaintiff; that he failed to follow the notice to Morgan by a further notice to the Inspector of Buildings, under the ordinance; that the work was superintended by him; that it was negligently and carelessly done, and was the proximate cause of the injury.

The plaintiff was entitled to have the evidence submitted

against Morgan under the third count of the *narr.* There was evidence tending to prove that as the owner of the property, he negligently failed to keep it in a safe condition, and to prevent it becoming a nuisance and menace to the lives and property of others.    Morgan, as landlord, owed a duty to the plaintiff under the covenants of his lease for quiet enjoyment. A landlord is liable for the fall of an unsafe building, if in duty bound to make it safe.   *Gear*, L. & T. sec. 159; *Brown & Otto* v. *Werner*, 40 Md. 15.

This is not a question of repairs by reason of decay or use of the property, and which, of course, falls on the tenant. This is the case of the landlord negligently allowing a property right in the adjoining land, without which the tenement was unsafe, to be removed without taking any action to guard against the danger.    It was a failure to perform his duty in respect to the *adjoining* property not of repairs to the premises leased.    This duty devolved on him as the owner under the ordinance.    He comes within the rule that an owner of fixed property must keep it in such condition that it will not become a nuisance to the injury of others. *Evans* v. *Murphy*, 87 Md. 505; *Deford* v. *State, use of Keyser*, 30 Md. 205.

There has been a conflict of authority in this class of cases on the subject of the necessity of the proof of negligence. *Shafer* v. *Wilson* (*supra*); *Ray on Neg. and Imp. Duties*, Ch. XI., 190, 200.    And it is argued that the decision in *Shafer* v. *Wilson*, following *Balto. & Pot. R. R. Co.* v. *Reaney*, tends to modify the rule in its general application, but this prayer of the plaintiff's is based on the belief that the law is settled in Maryland, towit: that in this case proof of negligence is unnecessary.    On the other hand, the defendants' third and fourth prayers are predicated on the theory that absence of negligence is a full and sufficient defense for any injury inflicted ; and the appellant contends that the same is incorrect.

Defendant's 5th and 6th prayers are objectionable, because they are both predicated on the theory that notice to Morgan is binding on this plaintiff, and that the fact that Murphy noti-

fied Morgan is an ample defense for the wanton destruction of this plaintiff's property. Whatever may be the effect of notice between the parties thereto (*Shafer* v. *Wilson*, 44 Md. 281), it goes without saying, it cannot bind a third party to whom such notice was never brought home. Nor would such notice as claimed in this prayer be sufficient to relieve Murphy under the city ordinance governing such notices. The plaintiff has a right to rely on the ordinance in the premises for the reason that the failure to protect the property was caused by the negligence of Murphy to put the ordinance in force by a further notice to the Building Inspector. Such a notice was a duty incumbent upon him. *McMahon* v. *N. C. Ry. Co.*, 39 Md. 438.

The instruction is further objected to because it leaves the jury to find only that Morgan *undertook* to protect the wall and *employed* Rippel to do the work, and omits altogether the fact that they failed in their undertaking and employment. It was misleading. All the jury had to find under such an instruction was: 1st. That Murphy notified Morgan. 2nd. That Morgan undertook to care for his property. 3rd. That he employed Rippel; and finding those segregated facts, they constituted a full and efficient defense for the destruction of the plaintiff's property, his eviction from his homestead, and the injury to his business.

*John L. V. Murphy*, for F. J. Murphy, appellee.

Murphy employed appellee Henry S. Rippel, an expert builder, to erect a warehouse on his lot and sent a notice to Dr. Morgan, the adjoining owner, on April 2nd, 1902, advising him of his intention to excavate and requesting him to protect the wall of No. 323 Clay street. This notice was received by Dr. Morgan on April 3rd, 1902. The ordinance in evidence and the testimony as to the usage among builders show that upon receiving the notice it became the duty of Dr. Morgan to underpin his wall. Should he have refused, it became the duty of Murphy or his builder to notify the building inspector who should have given Dr. Morgan 24 hours' notice to un-

derpin and upon his refusal so to do, would have underpinned the wall at the expense of Dr. Morgan.   Dr. Morgan did not refuse to underpin, but on the contrary, upon receiving Murphy's notice he sent for Frank H. Calloway who was his agent in such matters, and directed him to attend to underpinning the wall.   At this time the old buildings on Murphy's lot had been torn down and exposed two or three holes in the wall of Dr. Morgan's house from which the bricks had fallen.  Rippel testified except for these holes the wall was in very fair condition.   Calloway went to Rippel and entered into a contract on behalf of Dr. Morgan with Rippel, to underpin the wall and repair these two places.

Rippel before underpinning the wall, took certain precautions: He first dug a well to learn the character of the soil and found dry sand to the depth of 25 or 28 feet—a very good foundation.   He examined the interior of the Morgan building and found that the wall was properly anchored to the joists ; he then sheath-piled the building, which consists of driving planks into the ground around the building, making a sort of fence underground, both inside and outside of the wall "to keep the sand from sliding from under;" he then dug a narrow trench next to the wall "about three feet wide and probably 2 feet deep" and proceeded to underpin it.

The usual method of underpinning is by digging below the wall to be underpinned until a solid foundation is reached and then building up a pier from this foundation until the bottom of the old wall is reached; then a portion of the old bricks is removed and the pier is built up to fit into the space thus left open.   This is repeated at intervals along the wall until the whole rests on a solid foundation.   While Rippel was underpinning the wall 323 Clay street "about two feet was done," the wall cracked and the plaintiff, Serio, was compelled to move out.   The attention of the Court is directed to the testimony of Henry S. Rippel, which is nowhere contradicted, that he was doing the underpinning for Dr. Morgan, and that the cellar of Murphy's building was not excavated, until all the underpinning of the wall was done, and also that witness

Rippel remained in the employ of Dr. Morgan and took down and rebuilt the wall and completed the underpinning.

The declaration herein shows that the appellant believed at the time of the accident, Murphy and his agent Rippel, were "engaged in excavating said adjoining lot of said Murphy for the purpose of making a foundation or cellar" and until the close of the plaintiff's case. it was aimed to prove that the digging of Murphy's cellar caused the accident and Morgan and Rippel were neglected in the proof, although as a matter of fact, at the time of the accident, the only excavation on Murphy's lot was the narrow trench dug by Rippel as agent for Dr. Morgan. Therefore at the close of plaintiff's case, it appeared that Murphy had given notice of his intention to excavate his lot ; that an excavation had in fact been made on Murphy's lot, presumably the excavation mentioned in the notice; this, together with Butzler's testimony that the excavation was negligently made, was deemed by the Court below sufficient to take the case to the jury as to Murphy. Murphy then offered testimony that was not attempted to be contradicted, tending to prove that he was not in any wise connected with the hole or the accident. When two adjoining lots are vacant, one lot owner may use his lot as he sees fit, but his neighbor is entitled to lateral support of his land, and if the lot owner digs so close to his neighbor's lot that the neighbor's land falls into the pit, then he is liable for the value of the land, as for the taking of property, and that whether the excavation be made carefully or negligently. If the neighbor erect a house on his lot, a new set of rights and duties come into effect. The neighbor does not, by the erection of the house, acquire any additional rights in the adjoining land; whether he may acquire a right of support by prescription similarly to ancient rights is not material to this case, as it is not alleged or proved that Morgan's house had any right of support by prescription or otherwise. Although the neighbor by building does not acquire any additional rights in the adjoining lot, he has the right to expect that the adjoining lot owner will be careful in using his lot, so as not to in-

jure the house, and if the adjoining owner carelessly or wantonly throws the house down, he will be liable, not for failing to furnish it with adequate artificial support, but for negligently injuring it just as he would be liable for carelessly injuring the cow or the wagon standing on his neighbor's land. And reciprocally, the neighbor must expect that the adjoining owner will use and improve his lot, so he must make his house strong enough to withstand any reasonable use. If the adjoining owner makes an excavation for an usual and ordinary purpose in a careful manner, he will not be held liable even if the neighbor's house fall. *Bonaparte* v. *Wiseman*, 89 Md. 14; *Shafer* v. *Wilson*, 44 Md. 268; *Brown* v. *Werner*, 40 Md. 15; *McHenry* v. *Marr*, 39 Md. 510.

The construction of a railroad tunnel is not an ordinary and usual excavation which a land owner is bound to expect when he erects his house. *Reaney's case*, 42 Md. 127.

The Ordinance of Baltimore City provides that it is the house owner's duty to protect his house to the depth of ten feet below which the excavating owner must protect. The depth of the excavation in the case at bar was variously testified to as between four feet and the height of a man.

The refusal to grant the plaintiff's first prayer did no harm since the evidence clearly shows that the defendant Murphy had nothing to do with the excavation which caused the injury; but conceding that Murphy did make the excavation the prayer is erroneous as a statement of law. It differs from the prayers granted and from the allegations of the plaintiff's own declaration in that it leaves out all questions of notice and negligence in making the excavation and protecting the wall. While the plaintiff's declaration alleges that the excavation was made in a negligent and careless manner, if the prayer is sound the defendant would be liable, if having given reasonble notice to the adjoining owner and having made the excavation with reasonable care, he failed to keep the wall from cracking; for obviously if he had furnished sufficient artificial support as the prayer demands, the wall could not crack or break. It follows that if Murphy after giving notice of his in-

tention to dig, should have used all diligence to discover the condition of the wall and should have given what seemed ample support, but which by reason of some hidden defect, should prove inadequate, since he left the wall without enough artificial support to hold it together, the plaintiff would hold him liable.

The doctrine that a lot owner improves his lot at his peril is contrary to all authorities and would seriously deter building. It is interesting in connection with *Reaney's case*, 42 Md., to refer to *Ward* v. *Andrew*, 3 Mo. 253, which arose on the same state of facts. In the *Missouri case*, the plaintiff instead of relying on the extraordinary character of the excavation; and that the Legislature could not authorize the railroad company to take property without compensating its owners, urged that the fact that the house fell was *prima facie* evidence of neglect on the part of the defendant; but the Court very properly held that the accident did not speak for itself, that walls crack and houses fall, however carefully excavations may be made, and decided for defendant although if the point had been raised as in the Maryland case the result might have been different. But where the excavation is of an ordinary character, which the proprietor has reason to expect, the rule is laid down in a number of cases in Maryland, that if the adjoining owner in excavating his lot uses reasonable care in so doing, he will not be liable, even if the wall be injured, although as a further precaution the owner, before excavating, should give his neighbor notice so that he may protect his wall.

In 3 *Kent's Com.*, 532, he states that "if the owner of a house in a compact town finds it necessary to pull it down and remove the foundations and he give due notice of his intention to the owner of the house adjacent he is not amenable for the injury which the owner of the house may sustain by the operation, provided he remove his own with reasonable and ordinary care." In *Washburn on Easements*, 435, the same precaution is referred to and the English cases sustain it. If the house was so weak that it could not stand the rea-

sonable improvement of the defendant's property conducted
with skill and care, any loss sustained by the plaintiff would
be *damnum absque injuria.*

Therefore the prayer offered by plaintiff was defective in not
stating that if the defendant used reasonable care in doing the
work, he was not liable, and was properly refused.

The defendant's 3–3½ and fourth prayers were simply a
statement of the rule laid down in *Shafer* v. *Wilson,* 44 Md.
282, "if the house was so weak that it could not stand the
reasonable improvement of the defendant's property conducted
with skill and care, any loss sustained by the plaintiff would be
*damnum absque injuria.*" These prayers are substantially the
same as the defendant's third prayer in *Shafer* v. *Wilson,* and
the defendant's first and second prayers in *Bonaparte* v. *Wiseman,* and were meant to instruct the jury that if the house fell
in spite of ordinary care the defendant is not liable.

The defendant's fifth prayer is to the effect that if Morgan
or Rippel and not Murphy did the work, then Murphy is not
liable. It is submitted that no argument is needed to sustain
this proposition. As to whether there was sufficient testimony
in the case to base this prayer upon that cannot be questioned
in this Court as no exception was taken to it on that ground
below. But it may be added that Rippel's testimony is that
the injury occurred subsequent to time that Morgan under-
took to do the work, that Rippel was working for Morgan and
not for Murphy and that from the time he was employed
by Morgan when the wall was apparently sound until he had
completed the underpinning and taken down and re-erected
the wall and left it in its present sound condition, he continued
in the employ of Morgan.

*Defendant's Sixth Prayer.* —This prayer was offered to cover
the rather weak testimony of Antonio Serio, which sug-
gested that Rippel was superintending the work for Murphy
and instructs the jury that even if Rippel made the excavation
as agent for Murphy; if they further find that Murphy gave
timely notice to the adjoining owner of his intention to make
the excavation, and Rippel as Murphy's agent used reasonable

care in making the excavation, then Murphy is not liable. This follows *Bonaparte* v. *Wiseman*, and *Shafer* v. *Wilson.*

*Conway W. Sams*, for W. P. Morgan, appellee.

*Joseph N. Ulman* (with whom was *S. J. Harman* on the brief), for H. S. Rippel, appellee.

Fowler, J., delivered the opinion of the Court.

The plaintiff below, and appellant in this appeal, brought an action to recover damages caused by the injury of a wall of the house he was occupying as a dwelling.

The facts briefly stated are that the plaintiff was a tenant of Dr. Wilbur P. Morgan of the premises known as No. 323 Clay street, Baltimore City, under a written lease which contained a covenant that he was to make all repairs. This he concedes. Frank J. Murphy is the owner of lots 320 and 322 on the north side of West Lexington street. These lots run back to and also front on Clay street, and adjoin the premises of the plaintiff on the west. Mr. Murphy employed Henry S. Rippel to erect a warehouse on his lot and sent a notice to Dr. Morgan, the owner of the premises occupied by the plaintiff, of his intention to excavate and requesting him to protect the west wall of his house. While this work was in progress according to plaintiff's witnesses the wall was cracked and badly injured, and the plaintiff was compelled to move out. He has brought this suit against Dr. Morgan, his landlord, Henry S. Rippel, the builder, and Frank J. Murphy, the owner, of the lot about to be improved.

At the close of the plaintiff's case the jury were instructed that he had offered no evidence legally sufficient to justify a verdict against either of the defendants, Morgan or Rippel. There was accordingly a verdict and judgment thereon in their favor and the case proceeded against the remaining defendant Frank J. Murphy.

At the close of the testimony offered by the defendant, Murphy, the plaintiff offered one and the defendant five

prayers.   The plaintiff's prayer was refused and those of the defendant were granted.   These rulings, together with the granting of the prayers of the other defendants taking the case from the jury as to them constitute the only exception presented by this appeal.

It is impossible to read the record without coming to the conclusion at once that the trial Court committed no error when at the close of the plaintiff's case the jury were told that no testimony had been offered by the plaintiff legally sufficient to entitle him to recover as against Morgan and Rippel.

The former, as we have seen, was the plaintiff's landlord, but as such he was not only under no obligation to repair but that duty rested upon the plaintiff himself.   The evidence shows, if it shows anything clearly and sufficiently, that while the excavation was being made upon the premises of the defendant, Murphy, the wall was cracked and badly injured. There is an utter failure, so far as the plaintiff's testimony is concerned, to connect Dr. Morgan with this work.   There is no proof offered by the plaintiff that he was guilty of any negligence or that he failed in any duty imposed on him by law. The notice to the effect that the wall in question as well as a floor joist had been condemned was sent to Dr. Morgan on the 29th April—long after the injury for which this suit was brought had happened—and, therefore, it affords no evidence whatever that Morgan was made acquainted with the bad condition of the wall before it cracked.   But, as we have seen, under the lease it was the duty of the tenant to make repairs if any were necessary.   Again, under the provisions ·of the City Code offered in evidence by the plaintiff even if there was any evidence that Dr. Morgan failed to comply with the notice to protect his wall, it was the duty of the Building Inspector of Baltimore City to do the work at Dr. Morgan's expense before the proposed excavation was made on the adjoining lot.   In point of fact, however, it was developed in the further progress of the case that the wall was injured while the underpinning was in progress and before the excavation was commenced for the building about to be erected on Murphy's lot.

Without prolonging this opinion by a rehearsal of the plaintiff's testimony it is enough to say that there is no sufficient proof by the plaintiff that Rippel did the work of excavation or that it was done under his supervision or control. But if we assume there was legally sufficient proof of this fact, there is no evidence that he was guilty of such gross negligence as would make him liable under the settled rule applicable to cases like this.

. In the first place negligence cannot be presumed because the wall cracked or fell. 1 *Thompson on Negligence*, 277. And that seems to be the situation before us in this case. Nor is the *highest degree* of care required. If the owner of the building endangered by the proposed excavation has received proper notice, the party making the excavation is responsible only for actual or positive negligence in the manner of doing the work and is not required to use the same care that a prudent man would exercise in similar circumstances. *Jones on Easements*, sec. 614. Or in other words, as we have said in *Shafer* v. *Wilson*, 44 Md. 280, the work of excavating must be done with reasonable and ordinary care.

. There was only one witness of the plaintiff who gave any testimony in regard to the manner in which the work was done, and even he, did not see it done, but he appears to be of opinion that he being a very prudent man himself, he would not have ventured to underpin in this case without resorting to some other and further precautions. But he fails to give any facts to show actual and positive negligence, and when asked the direct question whether he considered it careless to underpin that building from the outside, he replied, that in thirty years experience he had had much worse buildings to contend with and never had a mishap, because he always took precautions to guard against it. He did not examine the inside of the house. But assuming that there may have been some slight circumstances testified to by this witness which would have warranted the Court in submitting to the jury the question whether Rippel was guilty of negligence, still the granting of this prayer worked no injury to the plaintiff—for this

very question, namely, whether Rippel exercised due and or-
dinary care was submitted to the jury in the instructions given
at the instance of the defendant Murphy, and they found there
was no negligence; that the work was carefully and properly
done—otherwise they could not have found, as they did, a
verdict for defendant.

This brings us to a consideration of the rulings of the Court on
the prayers which were offered by the plaintiff and defendant
Murphy respectively at the close of the testimony on both sides.

The plaintiff's prayer was properly refused, because it is
based upon the proposition that the plaintiff is entitled to re-
cover without regard to the question of negligence, whereas
the settled rule is that negligence must be shown before there
can be a recovery. The third and third and a-half and fourth
prayers of the defendant only announce the well-settled law
that if a person who is about to excavate his own lot in prox-
imity to the wall of an adjoining house gives reasonable notice
thereof to the adjoining owner, the latter is bound to protect
his own property and the former is not liable for damages
sustained, if the excavation is made with ordinary care. *Shafer*
v. *Wilson*, 44 Md. 282; *Bonaparte* v. *Wiseman*, 89 Md. 12.
The fifth of defendant announces an equally plain proposition,
viz., that if the defendant, Murphy, gave notice, as required,
to Dr. Morgan to protect the property occupied by the plain-
tiff and if said Morgan employed Rippel to do so and the wall
was cracked, no recovery can be had against Murphy. Ob-
viously so, because according to the hypothesis of the prayer
he was an absolute *stranger* to *that part* of the work. The
uncontradicted testimony of Rippel is that the injury occurred
after the time he undertook to do the work for Dr. Morgan
and while he was doing the underpinning for him and not for
Murphy. Defendants' sixth prayer is also under the authori-
ties cited free from error. It is to the effect that even if Rip-
pel was acting for Murphy, still if due and ordinary care was
exercised in the work, Murphy is not liable.

Finding no errors in the rulings excepted to the judgment
appealed from will be affirmed.

*Judgment affirmed with costs.*

(Decided June 8th, 1904.)