COMBUSTION ENGINEERING COMPANY, INC., *v.*
JACOB HUNSBERGER, INDIVIDUALLY AND TO USE OF
STATE ACCIDENT FUND

[No. 6, October Term, 1936.]

*Decided November 11th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William L. Marbury, Jr.,* and *Jesse Slingluff, Jr.,* with whom were *L. Wethered Barroll* and *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Leonard Weinberg* and *Zanvyl Krieger,* with whom were *Everett L. Buckmaster* and *Weinberg & Sweeten* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

An employee of a subcontractor on construction work in a building, after having been awarded compensation for an injury under the Workmen's Compensation Act, has sued over and recovered a judgment against another subcontractor on the ground of negligence of the defendant causing the injury. Code, art. 101, sec. 58. The defendant on appeal questions the refusal of the trial court to direct a verdict in its favor, and the granting of instructions to the jury on prayers of the plaintiff which are thought to have excluded a defense from consideration.

The work was reconstruction of a boiler room for the United States Industrial Alcohol Company, and it had been going on for three months or more. The Combustion Engineering Company was finishing erecting on each side of the boiler, from the first floor up to a height of thirty to thirty-five feet, an iron air duct, or preheater of air for the furnace, consisting of a shaft or chamber inclosed on the sides and surmounted by a box cover, also inclosed except for a small door for cleaning out, near the top. Within the preheater there were plates extending throughout the length, twenty-seven in number, spaced about an inch or an inch and a half apart, and supported by angle irons at intervals. Inside the top were shelves for workmen to lie on when cleaning out. The plates, or elements, as they were called, were to be welded at the top, and that was the work being done at the time of the accident. Below the preheaters, in the basement, the plaintiff's employer, McNamara & Co., had recently started work of constructing connections of the preheaters with the boiler. The basement was open, no floor boards having been laid above it.

At the beginning of the day's work on the morning of the accident, Walter Durdella, one of the Combustion Company's workmen, climbed the ladder to the top of the particular preheater they had been working on at the close of the last preceding working day, and began the work of forcing the tops of the plates, or elements, in

position for his brother to weld them together from outside the box. The force was applied by means of a metal wedge, in size about a quarter of an inch by about one inch and a half, and ten or eleven inches long, hammered in between two plates. The restriction on the space required Durdella to do the work lying on his stomach. While he was doing this, twenty to thirty minutes after starting work, a wedge fell down through the preheater and struck and injured the plaintiff working underneath it. Durdella's explanation of the occurrence—and he was the only man who had knowledge of what occurred at the top—was that he first drove the wedge in until he was sure it was held fast in place, then, resting his weight on one arm, with the other gave it a hard stroke; and as he did so the wedge jumped out and found its way down through the preheater. At the time Durdella supposed that it must have lodged in the preheater somewhere.

The plaintiff's case was rested on an assumption that the mere fact of the falling of the wedge afforded evidence of negligence, and the trial court, on a prayer of the plaintiff's, instructed the jury that this was true. But this court does not agree in that view. There must be evidence from which the jury might reasonably and properly conclude that there was negligence. *Annapolis & Balto. Short Line R. Co. v. Pumphrey,* 72 Md. 82, 19 A. 8; *Gans Salvage Co. v. Byrnes,* 102 Md. 230, 245, 62 A. 155; *Serio v. Murphy,* 99 Md. 545, 556, 58 A. 435; *Benedick v. Potts,* 88 Md. 52, 40 A. 1067. And apart from any question of the effect on a *prima facie* presumption, if there should be one, of evidence of the facts produced by a defendant (*Byrne v. Boadle,* 2 H. & C. 722; *Heim v. Roberts,* 135 Md. 600, 605, 109 A. 329), the court is of opinion that the mere fall of a tool being used within the building, in work of construction, cannot be presumed to result from negligence, because it cannot be supposed that such a thing is probably the result of negligence every time it occurs. On the contrary, it would seem likely that, with workmen handling loose tools continually, the falling of some of them at times must be expected despite

all precautions. To presume otherwise would be to presume a perfection in men's work which we know does not exist. Precautions that will ordinarily keep falling objects from an adjacent highway are required, for the work should not invade the highway. And temporary covered walks built below construction work are common sights. When objects have dropped on highways it has been presumed, *prima facie,* that the dropping resulted from lack of the requisite precautions to keep them off. *Decola v. Cowan,* 102 Md. 551, 62 A. 1026; *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202. And there may also be material used in construction work which would not be dropped inside the building if ordinary care were exercised. The case of the fall of scantling, *Clough & Molloy v. Shilling,* 149 Md. 189, 131 A. 343, is an instance. In a Massachusetts case cited, even the fall of a piece of scantling has been viewed as a normal incident of construction work, not to be presumed negligent. *Kimball v. George A. Fuller Co.,* 258 Mass. 232, 154 N. E. 762. But, as stated, it seems to the court plain that there must be some falling of small tools and other objects handled with ordinary care in the course of the work, and that therefore a particular fall cannot, of itself and without more, afford proof of negligence. Unless facts appear to indicate negligence, it must be taken as no more than one of the incidents of the work, to be expected. Error is found in the instruction to the contrary in this case.

The facts given in Durdella's evidence leave it open to speculation whether, despite his belief that the wedge was held fast, he had driven it in more lightly than usual, or whether the plates offered unusual and unexpected resistance. That the wedge jumped out when struck would seem to indicate unexpected resistance. If there was a miscalculation on Durdella's part as to the resistance, or otherwise, that fact alone would not indicate negligence unless it could be said that every such miscalculation on the part of a workman is probably due to lack of ordinary care. And plainly, we think, it cannot. It is conceivable that with the greatest practicable care a work-

man might be surprised at the resistance of metal, and evidence would be needed to show the contrary in this instance. *South Baltimore Car Works v. Schaeffer,* 96 Md. 88, 53 A. 665. If one cause, free from negligence, remains possible, the evidence not permitting the ascertainment of another, negligent cause, the case for negligence in the fall of the wedge is not proved. "In matters of proof we are not justified in inferring from mere possibilities the existence of facts." *Balto. & O. R. Co. v. State,* 71 Md. 590, 599, 18 A. 969, 971; *Harford County v. Wise,* 75 Md. 38, 41, 23 A. 65; *Regent Realty Co. v. Ford,* 157 Md. 514, 521, 146 A. 457.

In the opinion of the court, negligence, if there was any, causing the accident, must have consisted in doing the work above without some adjustment of the two jobs of work, with due care for the safety of men working below in case of a fall. There is evidence that pieces or rods of heated metal were expected to fall down through the preheater, and that fall of a tool was anticipated as a possibility, although apparently not so likely in view of the obstruction by plates and angles inside a preheater.

The defendant's foreman and Durdella testified that, before McNamara's men worked there, boards had been placed under and about the bottom of the preheater to protect workmen laying a concrete floor in the basement, principally, at least, to protect them from hot metal, and that the McNamara men had to remove the boards under the preheater to do their work. At that time, says the foreman, he discussed the removal with the McNamara foreman, and the latter undertook to watch the defendant's men, and, while they were at work on the preheater, to keep his own men from under them. The McNamara foreman and one of his men testify that they never saw any boards under this preheater, but the foreman, though called in rebuttal, was not questioned on an undertaking to watch and keep his men from under.

It would have been a defense to the action, preventing a finding of negligence on the defendant's part, if it should have been found that the McNamara foreman had in fact

undertaken to avoid injury to his men in this way. Receiving the assurance of it, the defendant would have been justified in relying on the arrangement, and failure to observe it would have been negligence on the part of the McNamara foreman alone. *Hilton Quarries v. Hall,* 161 Md. 518, 524, 158 A. 19. On the plaintiff's prayers, however, the trial court instructed the jury that if they should find that the defendant's employees above on the preheater negligently dropped the tool, and the plaintiff without negligence on his own part was injured by it, the verdict should be for the plaintiff. Concerned only with possible negligence of the workmen above, which we find unsupported on the evidence, the instructions allowed no bearing to the defense of an arrangement between the foremen by which danger should be avoided. And as the instructions in themselves defined for the jury a complete ground of recovery, they were erroneous, assuming that the case was one for the jury. *Hilton Quarries v. Hall,* 161 Md. 518, 530, 158 A. 19; *Philadelphia, W. & B. R. Co. v. State,* 66 Md. 501, 509, 8 A. 272.

The jury would not be required to accept the testimony of defendant's witnesses that there was the safeguarding arrangement. But could the jury, rejecting it, then positively find negligence in the defendant's carrying on its work above without a safeguarding arrangement, adjusting the two jobs so as to avoid injury to men working below? They could, we think, find that, notwithstanding the fact of the climbing up the ladder, in sight of the McNamara men if they had looked, and notwithstanding the subsequent presence of the welder in view outside the box cover, and whatever noise and glare there was from the work above, the McNamara foreman did not have the presence of the workmen above at that particular time brought to his notice. But notification at the particular time would be only one means of adjusting the work of the one set of men to the other, as has been said. A previous general arrangement instructing the adjustment to the McNamara foreman would be another possible means of accomplishing it. Disbelieving defendant's tes-

timony on the point, the jury would have before them no evidence on the subject, neither that such a previous provision was or was not made; and this would be so notwithstanding an opportunity to the plaintiff to show any and all facts on the point when his witness who knew them was on the stand. In that situation, we conclude, the jury was not presented with facts essential to a finding on the question of failure to exercise care required, and the burden on the plaintiff to produce evidence from which they might reasonably find failure on the defendant's part would not be met. In the opinion of the court, no evidence legally sufficient to prove negligence of the defendant has been produced, and prayers of the defendant for direction of a verdict in its favor on the evidence in the record should have been granted.

This conclusion renders decision of other questions argued unnecessary.

*Judgment reversed, without a new trial, with costs.*