ANSON FIELDS, ET AL., *v.* REID-HAYDEN, INC.

[No. 125, October Term, 1946.]

*Decided May 15, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert E. Coughlan, Jr.,* with whom was *Solomon Liss* on the brief, for the appellants.

*W. Hamilton Whiteford* and *Palmer R. Nickerson,* with whom were *Due, Nickerson* and *Whiteford* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellant brought suit in the Court of Common Pleas of Baltimore against the appellee, claiming damages for injuries received when struck by a piece of staging dropped by the employees of the defendant, while working above where he was standing. At the conclusion of the plaintiff's case, defendant offered a variance prayer, which was refused, and a demurrer prayer, which was granted. From a judgment for costs in favor of the defendant the plaintiff appeals.

The plaintiff-appellant was an electrician employed by the Maryland Dry Dock, Incorporated. On February 26, 1944 he was working on an uncompleted ship which was at Pier 5 of the Maryland Dry Dock at Fairfield Yard. The room in which he was working was separated from the main engine room by a bulkhead. In the main engine room there were other employees who were working on cables and who would pass them through to the plaintiff. For some reason they did not come as fast as the plaintiff expected, and he went to the main engine room in order to find out why. In order to do this he had to go up to the next deck, go across

an opening, then down some stairs and a catwalk into the main engine room. This catwalk was approximately 10 feet above the bottom of the ship. He went along this catwalk towards his fellow employees, and in so doing had to pass under the fidley, which is the space below, between and around the smoke stack. When he passed under this he looked up to see if there was anything above him, noticed that some asbestos was dropping and saw the legs of two men dressed in white coveralls. In the space between the inner and outer smoke stacks there was permanent staging, and also catwalks which workmen could use. The plaintiff continued along the catwalk on which he was walking until he reached his fellow employees. He then stood there with his right hand on a vertical ladder and engaged in conversation about the work. At that time the men he had seen working overhead were from 30 to 40 feet above him, and he was about four or five feet away from where a perpendicular line from them would reach the floor of the engine room. While he was standing there a piece of rough staging 7'x12"x2" fell from above and struck him on the right arm, breaking it in several places. From this injury he received a permanent disability and the insurer of his employer paid him $1,592.85 for compensation and hospital bills. The insurer is a party plaintiff to this extent.

Witnesses testified that employees of the appellee were insulating steam pipes, air ducts, and boilers, and were on that day working in the casing of the stack which would be about 35 or 40 feet above the main engine room. The staging they used was composed of planks, 3 inches by 12, and was erected by the Maryland Dry Dock. The other electrician, whom the plaintiff came into the main engine room to see, testified that the employees of the appellee had been dropping absestos in the morning, and he had called up five or six times to ask them to be careful with it. The accident occurred about 2 o'clock in the afternoon. This asbestos was what they used to cover the pipes. He said that up

until a short time before the accident he had noticed that two or three of the employees of the appellee were working overhead, and that there was no one else working overhead at the time. He saw the accident and the piece of board that fell down was covered with asbestos insulation. It was also testified that the planks used in the permanent staging come in 14 foot lengths and when it was needed to have a smaller piece, this staging was cut. The safety inspector of the Dry Dock Company investigated the accident about one-half hour after the accident, and said that all of the permanent staging was in place and he could not find that a board was missing anywhere. He said that when he got there, two Dry Dock men were sitting on cans in the fidley.

It was argued by the appellee, and held by the lower court, that these facts did not show any negligence by the employees of appellee. It is contended that there was no evidence that the board was being used by them, or that it was in their exclusive control, that there was no evidence showing precisely from what place the board fell, and that it may have fallen from other causes for which the defendant was not responsible.

This Court thinks that the evidence was sufficient to justify submitting the case to the jury. Appellee's employees were working in this opening. They were the only ones working there. The defendant was the only contractor doing insulation in the ship. Its men had been putting asbestos on ducts up in this space all morning. There were two men in white coveralls (unusual for other workers on shipboard) working there just a few minutes or seconds before the accident, when the plaintiff crossed under them. Asbestos was falling then. There is testimony that there were no other persons in the space by the smoke stack at the time. The board with asbestos on it fell from that direction. Under these circumstances the reasonable inference is that a board under the control of the employees of the appellee was negligently permitted to fall and struck the plaintiff.

In the case of *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202, a brick fell from the top of the defendant's building and struck the head of a child who was standing on the pavement watching a parade. The negligence relied on in that case was failure to keep in repair the chimney from which the brick fell. There was no evidence that the chimney needed any repair. There was, however, evidence that there were six or eight men on the roof of the building when the parade was going by, that they leaned on the chimney, and that some bricks fell as a result of this leaning. The court said that if the plaintiff's case had rested exclusively upon an inference of negligence deduced from the single fact that the brick fell without an apparent or assigned cause, this would have established a *prima facie* case, but that the plaintiff himself, in that case, had shown that an independent cause intervened which may have caused the bricks to fall. As the defendant was not responsible for this independent cause, he could not be held liable. In the case before us the plaintiff has shown no independent cause. He has shown that the defendant's workmen were in charge of the place from which the plank fell and they were the only ones there. The fact that two employees of the Dry Dock Company were found there a half hour later does not affect the situation at the time of the accident. It may be that the defendant will be able to show that the plank fell from some other cause than the negligence of its employees, but we think the facts produced by the plaintiff make a *prima facie* case.

In the case of *State v. Blumenthal Kahn,* 162 Md. 84, 159 A. 106, a man came in contact with the iron rail of a fence on a lawn in front of a house which had been wired by the defendant company. It was claimed that the work had been defectively done, but this Court said that the defendant was not in control of the premises except to do what it had to do under the contract, and it could only be responsible if it negligently performed that duty. At the time of the accident the owner was in possession of the house, the current could only be

turned on from within the house, and this might have been done by one of the occupants or by the employees, or by any workmen. Since the plaintiff's evidence showed that independent causes might have intervened to cause the accident, the court said that the case was properly taken from the jury. That case is plainly distinguishable from the case at bar.

In the case of the *Combustion Engineering Company v. Hunsberger*, 171 Md. 16, 187 A. 825, this Court said that the mere dropping of a wedge was not necessarily evidence of negligence. In that case the man who was driving the wedge thought it was firmly in place, gave it a hard blow, and it jumped out. The court said that even with the greatest practicable care a workman might be surprised at the resistance of metal, and, in the case before it, evidence would be needed to the contrary. However, the court also said that there might be material used in construction work which would not be dropped inside of a building if ordinary care were exercised and gave an illustration of the fall of scantling in an earlier case, *Clough & Molloy v. Shilling*, 149 Md. 189, 131 A. 343, 348. This last case is quite similar to the case before us. The court, in that case, said that the testimony tended to prove that employees of the defendant were working upon the scaffolding at the time of the accident; that they were using in their work pieces of scantling and at least three pieces were pulled up to the scaffold; that the death in the case was caused by a falling piece of scantling which came from above him and in the direction of the place where defendant's employees were working. The court said, "From these proven facts, under the authorities in this state and elsewhere, there arose a legal presumption that the falling of the scantling which caused the death of Shilling was due to the negligence of the defendant's employees, either in negligently doing an act which a reasonably prudent man would not have done, or omitting to do an act which an ordinary prudent and cautious person would have done, under similar circumstances."

The variance prayer was refused by the court and is not before us. We would, however, be slow to say that a variance prayer should be granted in a case where there was sufficient evidence of negligence to take the case to the jury, merely because the plaintiff in his declaration and in his particulars alleged more than it was necessary for him to prove, and failed to prove the additional facts alleged. In this case these facts were that the defendants were using a plank of the size which fell, and that they failed to lash it down.

As a result of our conclusions above outlined, the judgment will be reversed and a new trial awarded.

*Judgment reversed, with costs, and case remanded for a new trial.*